BUSH, RESPONDENT, *v.* CHILCOTT, APPELLANT.

(No. 4,858.)

(Submitted September 12, 1922. Decided October 10, 1922.)

[210 Pac. 907.]

*Physicians and Surgeons — Malpractice — Burden of Proof— Damages—Difficulty in Proving—Evidence—Improper Admission—Curing Error—Instructions—Law of Case—Appeal and Error.*

Trial—Evidence—Improper Admission—Error Cured by Instruction Withdrawing It.
1. Where, after testimony had been admitted over objection, the court in an instruction withdrew it from consideration by the jury, appellant cannot be said to have been prejudiced by its admission in the first instance.

Physicians and Surgeons—Malpractice—Evidence—Insufficiency.
2. In an action against a physician and surgeon alleged to have consisted in failure to amputate plaintiff's leg a few inches above the ankle where it had been broken, before gangrene had spread to such an extent as to make amputation between the knee and the hip

[64 Mont. 346.]

necessary, thus depriving plaintiff of the use of a larger portion of the leg than would have been required if timely operation had been performed immediately above the break, evidence of plaintiff *held* insufficient to warrant recovery.

Same—Instructions—Law of Case.

3. An instruction of which no complaint was made became the law of the case whether right or wrong.

Same—Difficulty of Establishing Damages Does not Relieve Plaintiff from Burden of Proof.

4. Although in an action of the nature of the above the ascertainment of the proper amount of damages to which plaintiff may be entitled may be a matter of practical difficulty, the burden of establishing the amount thereof and that they resulted proximately from the act of the defendant is upon him, and he must leave nothing to conjecture.

*Appeals from District Court, Carbon County; Charles A. Taylor, Judge.*

ACTION by William E. Bush against W. L. Chilcott. From a judgment for plaintiff and an order overruling motion for new trial, defendant appeals. Reversed and remanded.

*Messrs. Johnston, Coleman & Johnston,* for Appellant, submitted a brief; *Mr. J. H. Johnston* argued the cause orally.

*Mr. R. G. Wiggenhorn,* for Respondent, submitted a brief, and argued the cause orally.

MR. COMMISSIONER LEIPER prepared the opinion for the court.

A motion for rehearing was made in this case. After considering this motion it was deemed advisable to amplify certain statements made in the original opinion. To that end, and to avoid encumbrance of the record, the original opinion has been withdrawn and this one substituted, although the result reached is the same.

This is an action for damages for alleged malpractice. On November 20, 1918, the plaintiff while driving a team of horses hitched to a cart, was thrown therefrom, and one of the wheels of the cart passed over the plaintiff's left leg, breaking both bones of the leg at a point about three inches above

the ankle. The accident occurred about seven miles from the Clark ranch in Wyoming, which was the nearest habitation. The team ran away and the plaintiff walked and crawled to the Clark ranch, and from there was taken by automobile to Belfry, Montana, where he placed himself under the defendant's care, for the purpose of having the injured limb treated. The defendant was a physician and surgeon practicing at Belfry, Montana. The accident occurred at about 3:30 o'clock P. M., and plaintiff arrived at defendant's home about midnight of the same day, where plaintiff remained until November 22, when he was removed to Mrs. Moore's, and he remained at Mrs. Moore's until the evening of December 4 following, when he was taken to the hospital of Dr. Adams at Red Lodge. On the morning of December 5, Dr. Adams, assisted by Dr. Holmgren, amputated plaintiff's left leg about midway between the knee and the hip.

The complaint sets forth two causes of action. Under the allegations of the first cause of action the defendant was charged with liability for the loss of plaintiff's foot and leg, and general, as well as special, damages were sought. At the conclusion of the plaintiff's case, the defendant moved the court to withdraw from the consideration of the jury the first cause of action. This motion was granted. A like motion was made as to the second cause of action, which motion was denied. Thereupon defendant offered testimony covering the second cause of action. Both parties having rested, defendant moved the court for a directed verdict, which motion was overruled. The jury returned a verdict for plaintiff in the sum of $3,500, and judgment was rendered upon such verdict. Thereafter defendant moved for a new trial. This motion was overruled. These appeals are from the judgment and an order overruling the motion for a new trial.

The second cause of action of the amended complaint alleges that the defendant is a physician and surgeon duly licensed to practice as such within the state of Montana; that the plaintiff suffered a simple fracture of the left leg and em-

ployed the defendant to reduce the fracture and set the broken bones, which employment was accepted by the defendant; that thereafter the injured leg became affected with gangrene; that the only means of checking the spread of the infection was by the amputation of the portion of plaintiff's leg so infected; and continuing, it is alleged: "That, however, the defendant negligently, unskillfully, willfully and wantonly, after learning of the gangrenous condition of plaintiff's said leg, permitted the infection to spread throughout, contaminate, and affect the plaintiff's entire left leg, and did nothing whatsoever to check the said infection, and negligently and unskillfully failed to amputate the plaintiff's said leg promptly upon discovering the infection, when by amputating his leg immediately above the break the infection would have been checked and the remainder of plaintiff's said leg saved for him; and negligently, unskillfully, willfully and wantonly failed to call other and better skilled physicians and surgeons that were then available and near by into a consultation, or to permit such other physicians and surgeons to amputate said leg at such point promptly upon discovering such infection; and negligently, unskillfully, willfully and wantonly failed to disclose to the plaintiff the critical condition that his said leg was in and the fatal results that would inevitably follow from such gangrene, and that unless checked such gangrene would inevitably spread throughout the plaintiff's entire system and would finally and shortly result in death.

"That by reason of the defendant's said negligent, unskillful, willful and wanton conduct and treatment, the plaintiff's entire left leg became infected with gangrene and mortified, and the infection commenced to spread throughout his entire system, and the plaintiff was compelled to, and did on the fifth day of December, 1918, consult and call upon other physicians and surgeons, and it became necessary to, and such other physicians and surgeons did, in order to save his life, at once amputate and remove his said left leg at a point about five inches above the knee. ·

"That, but for the negligent and unskillful conduct of the defendant above mentioned, the plaintiff would have lost only the lower portion of his leg from a few inches above the ankle, and would have been enabled to procure an artificial foot, whereby he would have been very little crippled and would have been able to follow his usual occupation of laborer and farmer, with practically the same efficiency as before the injury; but that, by reason of the defendant's said negligent, unskillful, willful and wanton conduct, he has been rendered permanently crippled and unable to perform any work and labor, or to follow his said usual occupation, and by reason thereof he has been damaged in the sum of $20,000."

The answer admits the employment, but denies the other material allegations of the complaint.

Certain testimony was admitted over the objection of the [1] defendant tending to prove the earning capacity of the plaintiff. It is argued that the admission of this testimony prejudiced the defendant. Whether or not it was error to admit this testimony, all consideration thereof was withdrawn from the jury by instruction No. 7, which reads as follows: "In this case evidence has been introduced concerning plaintiff's earning capacity before the injury and since and his future earning capacity, and generally the impairment of his earning capacity. You are instructed that, if you find for the plaintiff, in view of the fact that no special damages of this kind have been pleaded, that plaintiff is not entitled to recover for such impairment of earning capacity or for loss of earnings since the injury complained of, and you should disregard such evidence as to earning capacity, as well as evidence of what it would cost to purchase annuities."

No error is predicated upon the giving of this instruction. It withdraws from the consideration of the jury all of the testimony to which objection was made. Therefore defendant could not have been prejudiced by the admission of the testimony. (*Montague* v. *Hanson*, 38 Mont. 376, 99 Pac. 1063.)

[64 Mont. 346.]

We have examined the other assignments, relating to the admission of testimony, and find no merit in them.

It is earnestly contended by counsel for the appellant that [2] the evidence is insufficient to support the verdict and judgment. The testimony is quite voluminous, and a recapitulation thereof herein would serve no useful purpose. We will content ourselves with an examination of that part thereof which relates to the damages alleged to have been suffered.

The loss of the plaintiff's foot, together with a portion of the leg between where the break occurred and the knee, is attributable to and a direct result of the injury resulting from the accident. No attempt is made in the complaint to hold the defendant liable for this loss. This is apparent from the allegations of the complaint as set forth in the second cause of action. Amputation of the injured limb was actually made between the knee and the hip. But it is alleged that the part of the plaintiff's leg below the point at which the break occurred became affected with gangrene; that the defendant knew of such infected condition, but that he did nothing to prevent the spread of the infection and did not amputate the leg promptly, or cause amputation to be made, so as to prevent the spread of the infection, and that because of such negligence the infection spread, and the plaintiff lost the additional portion of the leg and was damaged thereby. The damage claimed is that which it is alleged resulted from the loss of the additional portion of the leg.

Assuming that the defendant was negligent in the manner charged, and that such negligence was the proximate cause of the loss of the additional portion of the limb, then, upon proof thereof, the plaintiff is entitled to recover such damages as will compensate for all of the detriment proximately caused thereby. (Sec. 8686, Rev. Codes 1921.)

All of the evidence in the record which relates to the damage alleged to have been suffered, except the fact of the amputation, is contained in the plaintiff's testimony, and is as follows: "I have not been able to make a success of trapping

as I did before. I was a whole lot slower in setting and tending to them. By reason of the fact that I cannot use my foot and step on the springs of a trap, I have to use an inferior trap and one that is not so successful in catching the coyotes. I cannot mount a horse as I could and therefore have to use a real gentle one now. I am unable to make myself useful in caring for sheep as I used to. I know that I cannot do as well as I used to. It would knock me out of one-fourth of what I used to make easily enough, if not more.''

But in this testimony the plaintiff is comparing his ability after the amputation, in the several respects mentioned, with his efficiency in like respects, before the accident occurred. However, a part of this difference was caused by the loss of the foot and a part of the leg below the knee, and this, admittedly, was the result of the unfortunate accident and not in anywise occasioned by the negligence of the defendant.

The plaintiff further testified: ''If I had only lost my foot, so that I would still have a knee-joint, I could earn more money in that way than I could without the knee-joint, as I am now. When I speak of the amputation being such that I could have gotten around better with simply an artificial foot, I had in mind that I could get around better because of having the knee-joint. That would give me action that I could not get with an artificial limb. The amputation now is about one-third of the way up from the knee to the thigh. I do not suppose that it makes very much difference where the amputation is above the knee, so long as it is between the knee and the thigh; I don't have the knee-joint. I have sufficient from below the hip to attach an artificial leg. There is two-thirds of the leg between the knee and thigh left after my amputation. When I spoke about the strength of the leg being largely dependent upon the length of what is left, I meant that the more of the muscles there were left the stronger it would be. I would then be better able to lift an artificial leg.''

[64 Mont. 346.]

It will be borne in mind that instruction numbered 7, above,
[3] withdrew from the consideration of the jury all of the
evidence of earning capacity and loss of earnings. No complaint is made of the giving of this instruction. Right or
wrong, it became the law of this case. (14 R. C. L. 822;
*Schmidt* v. *Carpenter,* 27 S. D. 412, Ann. Cas. 1913D, 296,
and note, 131 N. W. 723.)

While it is true that in cases of this character damages
[4] cannot be ascertained with mathematical certainty, yet a
jury must have some competent evidence before it from which
to arrive at its conclusions and must not base its verdict upon
mere conjecture and speculation. And this rule is not altered
by the fact that the ascertainment of the proper amount of
damages is a matter of practical difficulty. The rule is laid
down in Corpus Juris as follows: "Hence, where an action
is for damages which are uncertain or have not been admitted,
the burden is on plaintiff to establish the amount thereof,
and that they resulted from the act of defendant." (17 C. J.
1023; 8 R. C. L. 438.)

This court, in passing upon the proof of damages required,
has said: "Like all other cases for the recovery of damages
in actions upon torts, a jury must be trusted to arrive at a fair
estimate of the damages, after a full consideration of all of
the evidence which may be introduced upon the subject. However, competent evidence must be produced of all facts necessary to recover, upon which the jury can base a reasonably
reliable conclusion; nothing can be left to mere conjecture."
(*Watson* v. *Colusa-Parrot M. & S. Co.,* 31 Mont. 513, 79 Pac.
15.)

The supreme court of Connecticut has announced the rule
in the following language: "If the plaintiff is entitled to damages and the defendant liable for them, the one is not to be
denied of damages, nor the other loaded with damages to
which he is not legally liable, simply because the exact ascertainment of the proper amount is a matter of practical difficulty." (*Sellick* v. *Hall,* 47 Conn. 260.)

The supreme court of New York has held: "It is true that it is difficult to separate the injury; but that furnishes no reason why one tort-feasor should be liable for the act of others who have no association and do not act in concert with him. If the law was otherwise, the one who did the least might be made liable for the damages of others far exceeding the amount for which he really was chargeable, without any means to enforce contribution or to adjust the amount among different parties. So, also, proof of an act committed by one person would entitle the plaintiff to recover for all the damages sustained by the acts of others, who severally and independently may have contributed to the injury. Such a rule cannot be upheld upon any sound principle of law. The fact that it is difficult to separate the injury done by each one from the others furnishes no reason for holding that one tort-feasor should be liable for the acts of others with whom he is not acting in concert." (*Chipman* v. *Palmer,* 77 N. Y. 51, 33 Am. Rep. 566–568.)

We are of the opinion that the evidence in this case, considered in the light of the instructions given, is not sufficient to support a verdict or judgment for more than nominal damages.

Contention is further made by counsel for appellant that the evidence is insufficient to support the verdict or judgment in that it is not proven that the defendant was negligent, or, if that negligence be proven, then it is not proven that the injury complained of is the proximate result of such negligence.

These same matters have been heretofore presented in this court and by this court decided in a number of cases, and particularly in the cases of *Loudon* v. *Scott,* 58 Mont. 645, 12 A. L. R. 1487, 194 Pac. 488; *Schumacher* v. *Murray Hospital,* 58 Mont. 447, 193 Pac. 397. What has been said in the opinions in these cases should serve as a sufficient guide in this cause in the event of its retrial.

We recommend that the judgment and order be reversed, and the cause remanded for a new trial.

PER CURIAM: For the reasons given in the foregoing opinion, the judgment and order appealed from are reversed and the cause is remanded to the district court, with directions to grant a new trial.

*Reversed.*

Rehearing denied November 22, 1922.