JARVELLA, Respondent, v. NORTHERN PACIFIC RAILWAY CO., Appellant.

POHIA, Respondent, v. NORTHERN PACIFIC RAILWAY CO., Appellant.

(No. 7,454.)

(Submitted December 4, 1935. Decided December 21, 1935.)

[53 Pac. (2d) 446.]

104

*Messrs. Walker & Walker* and *Messrs. Gunn, Rasch, Hall & Gunn,* for Appellant, submitted an original and a reply brief; *Mr. Carl Rasch* argued the cause orally.

106

*Mr. T. J. Davis* and *Mr. L. C. Myers,* for Respondents, submitted an original and a supplemental brief and argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

Theodore Jarvella and Raymond Pohia each brought separate actions against the defendant railway company to recover damages for personal injuries sustained by them in a collision of a Hudson automobile in which they were riding, with a standing freight train at the defendant's crossing on South Montana Street in the city of Butte about 1:15 o'clock A. M. of February 4, 1934. Both actions are based on the same state of facts, and the two cases were consolidated for trial and tried together. Separate verdicts were returned and separate judgments entered. The appeal is from the two judgments: No motion for a new trial was made.

Defendant, at the close of plaintiff's case, made a motion for nonsuit, which was denied. At the close of the evidence

defendant moved for a directed verdict, which was likewise denied. Error is assigned on these two rulings and the making and entering of judgment. By these specifications defendant questions the sufficiency of the evidence to establish actionable negligence on its part, and avers that under the evidence it is established that plaintiffs were guilty of contributory negligence as a matter of law.

In the case of *Mellon* v. *Kelly*, 99 Mont. 10, 41 Pac. (2d) 49, 52, we said: "This court has often announced the rule that upon motion for nonsuit or directed verdict the evidence must be viewed from the standpoint most favorable to plaintiff, and every fact must be deemed proved which the evidence tends to prove. (*Nangle* v. *Northern Pac. Ry. Co.*, 96 Mont. 512, 32 Pac. (2d) 11.) No case should ever be withdrawn from the jury when reasonable men might draw different conclusions from the evidence. (Id.)"

Plaintiffs in their several complaints allege that the defendant railway company was negligent in the following particulars: (1) Failing to install and maintain a light at the crossing; (2) failing to have a person or watchman give warning of the presence of the train; (3) failing to have the train of freight-cars lighted; (4) failing to sound a bell or whistle or give any other notice or warning of the presence of the train of freight-cars; (5) failing to have any gates or arms or other signal indicating the presence of the train of freight-cars; (6) running the train of freight-cars on the crossing without giving any warning, by ringing the bell or sounding its whistle.

Montana Street in the city of Butte runs in a northerly and southerly direction. The main line of the defendant railway company running from Butte to Missoula crosses Montana Street in an easterly and westerly direction. The street from the north runs down grade to the railway crossing, although the grade is slight at the crossing and north of it for a short distance. The crossing is level with the street. A strip of concrete paving 18 feet in width is in the middle of the street. Silver Bow Creek crosses Montana Street approximately 100 feet north of the railway crossing; it is spanned by a bridge

about 50 feet wide. There are no buildings or structures of any kind north of the crossing and east of the street. West of the street and north of the crossing is the Domestic Manganese & Development Company's plant, a building the east side of which is 249 feet west of the west line of the paved part of the street. An elevated trestle extends along the south side of the building, which was testified to be from 20 to 40 feet in height. North of the manganese company's building and north of Silver Bow Creek are slag piles or walls from 16 to 18 feet high, the east boundary line of which ranges from 26 to 46 feet distant from the west line of the pavement. This slag pile or wall begins on the north bank of Silver Bow Creek and extends northward approximately parallel to the street for a distance of several hundred feet. South of the crossing and west of the street are three buildings of the Montana Power Company extending north and south a distance of 343 feet, which includes the open spaces between them. The distance of the east line of these buildings from the west line of the paving ranges from 35 to 51 feet. A little east of Montana Street and immediately south of the railway is a small watchman's shanty, and south of the crossing is the Montana Power Company's warehouse, the west line of which is 192 feet from the east line of the paving, and 287 feet from the crossing. North of this warehouse and beginning at a point along Montana Street running southeasterly is a high tight-board fence. The street is an arterial highway, many cars using it daily, estimated by a witness to be several thousand in number.

The railway company maintains at this crossing up to midnight a watchman; after that hour and until some time in the morning no watchman is there maintained. No bells, gates or other warning signals are maintained at the crossing, aside from the ordinary crossing sign similar to those used on rural railway crossings.

Defendant railway company's train left Butte, bound for Missoula, at 1 o'clock A. M., on February 4, 1934. It consisted of a locomotive, caboose and nineteen cars—nine box cars, seven flat cars, one refrigerator car, and an automobile car. As this

train was passing over the crossing, a Ford automobile driven by one Jack McAuliff collided with the train, broke the air line of the train, and caused the train automatically to stop. This automobile was driven in between two of the flat cars and was dragged westerly off of the crossing. After the train had been thus stopped and while it was blocking the entire crossing, plaintiff Jarvella, driving southerly down Montana Street, collided with the standing train, his car going in between two box cars. Plaintiff Pohia was riding in the car with Jarvella.

Jarvella testified that he was proceeding down the street at a speed of approximately 25 miles an hour with his car under control; that the car was a 1928 Hudson which he had driven for approximately six years; that the brakes were in fair working condition; that he could stop the car running at a speed of 25 miles an hour in a distance of 45 feet; that the "bright spot" of his lights was from 30 to 36 feet in front of the car; that for that distance and further in front of the car was what he termed the "glow" of the lights; that within this "glow" he could see objects, but not distinctly; that the night was very dark and no lights were on the crossing; that as he proceeded down the street he was looking ahead and did not see the train blocking the crossing until he was distant about 30 feet from the cars; that he applied the brakes and attempted to swerve his car to avoid striking the train; and that the collision ensued, resulting in the injuries of which these plaintiffs complain.

It appears from the record that although no lights are maintained at this crossing, immediately south of the crossing the Montana Power Company maintains lights which at times are burning, tending in some measure to light the crossing, but which at the time of this accident had been turned off. Other witnesses of plaintiffs testified that the night was very dark. Some of them testified that the night was clear, but no moon was shining; others thought that it was misting at the time, a condition which would indicate that the night was cloudy. Plaintiffs testified that no other automobiles were present at the crossing at the time they proceeded down Montana Street, and that no lights were around the crossing. These facts are dis-

puted by the witnesses for the railway company, who testified that from one to six cars were waiting there, and that some of the trainmen carrying lighted electric lanterns reached the crossing prior to the collision of the Hudson car with the train. Plaintiffs testified they were vaguely familiar with the crossing.

Montana Street, at the railway crossing, is partly within and partly without the boundaries of the city of Butte. It appears from the record that the easterly eight feet of the paved part of the street is within the boundaries of the city of Butte, and that that part of the pavement and street lying west of this line is without the limits of the city. Plaintiffs in their complaint allege that the crossing is "just outside" the city limits. The proof establishing the facts with reference to the location of the city boundary at this point was admitted over objection. No error is assigned, however, on the admission of the testimony.

Plaintiffs argue that, under the provisions of section 6521, ■ Revised Codes 1921, it was incumbent on the railway company to light its track within the city of Butte, and that therefore defendant was negligent *per se*. The pertinent part of the section provides: "If any railroad corporation within this state shall * * * fail to light its track in any city in this state * * * [it] shall be deemed guilty of a misdemeanor." The statute then provides penalties for the violation of the numerous provisions of this section.

It is urged by the defendant that the particular provision of the statute is void for uncertainty, in that no rule or standard is fixed as to the places where lights are to be installed, or the kind or character of lights to be used; in other words, that from a reading of the statute one would be unable to determine when he had complied with its provisions. In the case of *H. Earl Clack Co.* v. *Public Service Commission*, 94 Mont. 488, 22 Pac. (2d) 1056, 1059, this court said: " ' "Laws which create crime ought to be so explicit that all men subject to their penalties may know what acts * * * to avoid." (*United States* v. *Brewer*, 139 U. S. 278, 11 Sup. Ct. 538, 35 L. Ed. 190.) "In order to constitute a crime, the act must be one which the party is able to know in advance whether it is criminal or not. The criminality

of an act cannot depend upon whether a jury may think it reasonable or unreasonable. There must be some definiteness and certainty." (*Tozer* v. *United States,* (C. C.) 52 Fed. 917.) "If the legislature undertakes to define by statute a new offense, and provide for its punishment, it should express its will in language that need not deceive the common mind. Every man should be able to know with certainty when he is committing a crime. (*United States* v. *Reese,* 92 U. S. 214, 23 L. Ed. 563.)" (*Burk* v. *Montana Power Co.,* 79 Mont. 52, 255 Pac. 337, 339.) 'That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law; and a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.' (*Connally* v. *General Construction Co.,* 269 U. S. 385, 46 Sup. Ct. 126, 127, 70 L. Ed. 322.) 'The dividing line between what is lawful and unlawful cannot be left to conjecture. The citizen cannot be held to answer charges based upon penal statutes whose mandates are so uncertain that they will reasonably admit of different constructions. A criminal statute cannot rest upon an uncertain foundation. The crime, and the elements constituting it, must be so clearly expressed that the ordinary person can intelligently choose, in advance, what course it is lawful for him to pursue. Penal statutes prohibiting the doing of certain things, and providing a punishment for their violation, should not admit of such a double meaning that the citizen may act upon the one conception of its requirements and the courts upon another.' (*United States* v. *Capital Traction Co.,* 34 App. D. C. 592, 19 Ann. Cas. 68.)"

The particular part of the Act must be condemned on the authority, supra, and held to be void. Let it be noted, however, that by the provisions of subdivision 12 of section 5039, Revised

Codes 1921, the matter of regulating the lighting of railway tracks in cities and towns is reposed in the city or town council.

In the absence of legislative restriction which is not here violated, it is not negligence in itself for a railway company to allow a train of cars to stand on a highway crossing or to move slowly thereon. (*Bowers* v. *Great Northern Ry. Co.*, (N. D.) 259 N. W. 99, 99 A. L. R. 1443; *Philadelphia & R. R. Co.* v. *Dillon*, 1 W. W. Harr. (31 Del.) 247, 114 Atl. 62, 15 A. L. R. 894; *St. Louis-San Francisco Ry. Co.* v. *Guthrie*, 216 Ala. 613, 114 So. 215, 56 A. L. R. 1110; *Gulf, M. & N. R. Co.* v. *Holifield*, 152 Miss. 674, 120 So. 750; *Jacobson* v. *New York, S. & W. R. Co.*, 87 N. J. L. 378, 94 Atl. 577; *Jones* v. *Texas & Pac. Ry. Co.*, (La. App.) 154 So. 768; *Gage* v. *Boston & M. R. R.*, 77 N. H. 289, 90 Atl. 855, L. R. A. 1915A, 363; *Orton* v. *Pennsylvania R. Co.*, (C. C. A.) 7 Fed. (2d) 36; *Morris* v. *Atlantic City R. Co.*, 100 N. J. L. 328, 126 Atl. 295; *Jones* v. *Atchison, T. & S. F. Ry. Co.*, 129 Kan. 314, 282 Pac. 593; *Gilman* v. *Central Vermont Ry. Co.*, 93 Vt. 340, 107 Atl. 122, 16 A. L. R. 1102; *Trask* v. *Boston & M. R. R.*, 219 Mass. 410, 106 N. E. 1022; *Witherly* v. *Bangor & A. R. Co.*, 131 Me. 4, 158 Atl. 362; *Crosby* v. *Great Northern Ry. Co.*, 187 Minn. 263, 245 N. W. 31.)

It is generally held that at an ordinary crossing in a case where, as in this, a train has stopped on the crossing, or is moving slowly over it, it is not negligence on the part of the railway company in failing to blow the whistle or ring the bell (*Jones* v. *Texas & Pac. Ry. Co.*, supra; *Sisson* v. *Southern Ry. Co.*, 62 App. D. C. 356, 68 Fed. (2d) 403), or to place warning lights along the train (*Bowers* v. *Great Northern Ry. Co.*, supra; *Gulf, M. & N. R. Co.* v. *Holifield*, supra; *Philadelphia & R. R. Co.* v. *Dillon*, supra; *Trask* v. *Boston & M. R. R.*, supra), or to provide a flagman to warn the traffic (*Jacobson* v. *New York, S. & W. R. Co.*, supra; *Gulf, M. & N. R. Co.* v. *Holifield*, supra; *Plummer* v. *Gulf, M. & N. R. Co.*, (La. App.) 153 So. 322; *Southern Ry. Co.* v. *Lambert*, 230 Ala. 162, 160 So. 262; *Scott* v. *Delaware, L. & W. Ry. Co.*, 222 App. Div. 409, 226 N. Y. Supp. 287).

Many cases adhering to the rules stated, supra, concede that cases may arise because of peculiar and unusual facts and circumstances and owing to some peculiar environment rendering the situation unusually hazardous which may render a railway company negligent in the blocking of a crossing by a standing or slowly moving train of cars, as is illustrated by the following cases: *Crosby* v. *Great Northern Ry. Co.*, supra; *Gage* v. *Boston & M. R. R.*, supra; *Jacobson* v. *New York, S. & W. R. Co.*, supra; *Gulf, M. & N. R. Co.* v. *Holifield*, supra; *St. Louis-San Francisco Ry. Co.* v. *Guthrie*, supra; *Southern Ry. Co.* v. *Lambert*, supra; *Sisson* v. *Southern Ry. Co.*, supra; *Thompson* v. *St. Louis, Southwestern Ry. Co.*, (Tex. Civ. App.) 55 S. W. (2d) 1084; *Ausen* v. *Minneapolis, St. Paul & S. S. M. Ry. Co.*, 193 Minn. 316, 258 N. W. 511; *Gulf, M. & N. R. Co.* v. *Kennard*, 164 Miss. 380, 145 So. 110. In fact, the dangerous crossing rule was recognized by this court with reference to crossings in general, in the case of *Norton* v. *Great Northern Ry. Co.*, 78 Mont. 273, 254 Pac. 165.

Under the facts in this case, owing to the proximity of buildings and structures to the crossing tending thereby to accentuate any condition of darkness that might obtain at the crossing, and owing to the fact that the railway company by its conduct in maintaining a watchman there during certain hours of the day recognized the crossing to be extraordinarily dangerous, we are unable to say, as a matter of law, that the crossing was not an unusually hazardous crossing, and that the defendant railway company was not negligent in failing either to light the crossing or establish thereon suitable warning devices.

It is noteworthy, in passing, that the mere fact that no statute exists, or that no order by an authorized person has been made requiring gates or other safety devices at crossings, will not ipso facto relieve the railway company from the duty of providing safety devices at crossings sufficiently dangerous to require them. (Note, 60 A. L. R. 1110.)

Defendant argues, however, that the trial court gave an instruction founded on the part of section 3842 which, after conferring authority on the board of railroad commis-

sioners to order the installation of electric bells or warning signals on certain crossings, contains the following proviso: "Provided, however, all persons driving motor vehicles upon the public highways of this state, outside of corporate limits of incorporated cities or towns, where the view is obscure, or when a moving train is within sight or hearing, shall bring said vehicle to a full stop not less than ten nor more than one hundred feet from where said highway intersects railroad tracks within this state, before crossing the same, at all crossings where a flagman or a mechanical device is not maintained to warn the traveling public of approaching trains or cars." In the instruction the court followed the words of the statute quoted, but omitted therefrom the provision relating to crossings outside of the corporate limits of an incorporated city or town, that omission making the instruction clearly applicable to the facts here. It is urged that the instruction, right or wrong, became the law of the case, and that the jury disregarded it, as the evidence did not disclose that the plaintiffs stopped their car in conformity with the section, but in fact established the contrary, citing *Bush* v. *Chilcott*, 64 Mont. 346, 210 Pac. 907, and *Friesen* v. *Hart-Parr Co.*, 64 Mont. 373, 209 Pac. 986.

As we have noted, supra, the crossing was partly within and partly without the city limits of Butte, a substantial part of the crossing being within and without these limits. The statute applies to crossings which are outside the corporate limits of a city or town. The word "outside," when used as an adverb, as here, means "without an enclosure or certain limits." (Webster's Dictionary.) The crossing was not without the city limits, and therefore under the facts in this case the statute and instruction were without application here. We recognize the correctness of the rule contended for by defendant; but in order for the rule to control here, the instruction must have been applicable. This court will decline to reverse a case where the court below gave inapplicable instructions not followed by the jury. (*Babcock* v. *Maxwell*, 29 Mont. 31, 74 Pac. 64; *Smith* v. *Barnes*, 51 Mont. 202, 149 Pac. 963, Ann. Cas. 1917D, 330.) This contention is without merit.

It is contended that plaintiffs were guilty of contributory negligence under the rule approved in the case of *Knott* v. *Pepper*, 74 Mont. 236, 239 Pac. 1037, 1039, wherein it was written: "In the case of *Lauson* v. *Town of Fond du Lac*, 141 Wis. 57, 123 N. W. 629, 135 Am. St. Rep. 30, 25 L. R. A. (n. s.) 40, after holding that a person, driving without lights sufficient to see an obstruction in time to stop, was guilty of contributory negligence, the supreme court of Wisconsin said: 'We do not ground this rule on the fact that we have a statute requiring automobiles to carry reasonably bright lights while being operated during the hours of darkness. Independent of any statute, and considering the character of these machines, we hold that it would be negligent operation to run them without sufficient lights to enable the driver to see objects ahead of him in time to avoid them.' "

It will be recalled that the testimony was to the effect that plaintiffs were proceeding at a speed of 25 miles an hour; that at that speed the driver could have stopped the car within a distance of 45 feet; that the car lights cast a bright spot from 30 to 36 feet ahead, and directly illuminated an area within which objects could be distinctly seen; and that beyond this bright spot the glow from the lights shone for a further distance not definitely stated by plaintiff Jarvella within which objects could be discerned, but not distinctly. Obstructions in the highway could, under this testimony, be clearly seen by the direct light from the automobile in question at some distance beyond—from 30 to 36 feet; and as the lights also emitted a glow, we must assume, viewing the testimony in the light most favorable to the plaintiffs, as we are required to do, that for an appreciable distance beyond 36 feet objects could be observed, though not distinctly. Though the question presented is indeed close, we are unable to say, viewing this testimony as we must, that all reasonable men would agree that plaintiff was driving his car at a rate of speed at which he would be unable to stop within the range of his lights.

As we understand defendant's further contention, it urges that anyone who collides with a stationary train of cars on a

crossing—a stationary train of cars on a crossing being itself a warning—is of necessity guilty of contributory negligence. Many cases may be found in the books holding, under varying circumstances, that plaintiffs colliding with a slowly moving train of cars or a train of cars which had been stopped on a crossing are guilty of contributory negligence. On the other hand, other cases under facts somewhat similar to those in question hold that the question of contributory negligence is one of fact for the jury. It was so held where the question was raised on the pleadings in the cases of *Central of Georgia Ry. Co.* v. *Heard,* 36 Ga. App. 332, 136 S. E. 533, and *Elliott* v. *Missouri Pac. Ry. Co.,* 227 Mo. App. 225, 52 S. W. (2d) 448; and a like result was declared where the question arose, as here, on a motion for nonsuit or directed verdict, in the cases of *Nashville, C. & St. L. Ry. Co.* v. *Nall,* 236 Ky. 554, 33 S. W. (2d) 640, *Spiers* v. *Atlantic Coast Line R. Co.,* 174 S. C. 508, 178 S. E. 136, and *Short* v. *Pennsylvania R. Co.,* 46 Ohio App. 77, 187 N. E. 737. (See, also, 3 Blashfield's Cyc. Automobile Law, Perm. Ed., p. 210.) We conclude that the question of contributory negligence was properly submitted to the jury.

Judgments affirmed.

Mr. Chief Justice Sands and Associate Justices Matthews, Stewart and Morris concur.

Rehearing denied January 21, 1936.