OLSON v. DENVER & R. G. W. R. CO. et al.

(Two Cases.)

Nos. 6155 and 6156.   Decided February 2, 1940.   (98 P. 2d 944.)

Rehearing Denied, March 14, 1940.

*Van Cott, Riter & Farnsworth* and *Edgar C. Jensen,* all of Salt Lake City, for appellants.

*F. W. Keller* and *Therald N. Jensen,* both of Price, for respondents.

WOLFE, Justice.

These are appeals from two judgments entered in the District Court of Carbon County in favor of respondents, plaintiffs below. The cases were consolidated for trial in the District Court and all of the evidence adduced was admitted in both cases which were heard by the same jury. Separate verdicts were returned and separate judgments entered. The cases have been consolidated on appeal because, as below, the issues in both are the same. Both cases arise out of the same fact situation. We shall, therefore, hereafter discuss them as one case.

Before daylight on the morning of January 23, 1937, a caboose attached to a train of defendants was standing on defendants' railroad tracks so that it was across and blocked First East Street in Price, Utah. Dorothy Olson, a minor, on the morning of January 23, 1937, was riding south on First East Street in an automobile owned by Rex Causer but driven by Johnny Pappas while Causer rode in the rear seat. Said automobile collided with the caboose injuring Miss Olson. She recovered judgment below for personal injuries and her father, Emmett K. Olson, recovered judgment for her hospital, medical, and other expenses and for loss of her earnings.

The Railroad Company brings this appeal and assigns as error that (1) the trial court denied defendants' motion

for a directed verdict and (2) instructed the jury that Dorothy Olson was a guest in the Causer car at the time of the collision.

Respondents cross-assign as error (1) the trial court's denial of their motion to amend their complaints and (2) its refusal to instruct the jury as requested in Plaintiffs' Requests No. 3 and No. 4.

We shall consider first defendants' contention that the court erred in overruling their motion for a directed verdict on the ground that the evidence failed to disclose any negligence upon the part of defendants which proximately contributed to the accident.

A railroad company has a right ordinarily to permit a train or cars to remain a reasonable or lawful length of time across a highway and is not chargeable with negligence by reason of doing so. *Bowers* v. *Great Northern Ry. Co.*, 65 N. D. 384, 259 N. W. 99, 99 A. L. R. 1443; *Philadelphia & R. Ry. Co.* v. *Dillon*, 1 W. W. Harr., Del., 247, 114 A. 62, 15 A. L. R. 894; *Pennsylvania R. Co.* v. *Huss,* 96 Ind. App. 71, 180 N. E. 919; Blashfield's Cyclopedia of Automobile Law, Perm. Ed., Vol. 3, § 1794, p. 189; Huddy's Encyclopedia of Automobile Law, 9th Ed., Vol. 7-8, Sec. 37, p. 129. Nor are the employees of a railroad in the exercise of due care required to give warning signals of the presence on the track of a stationary train unless there is some unusual condition existing by reason of which said railroad employees know or should know that traffic on the highway might collide with the train even though driving with due care, because, under ordinary conditions, the presence of the train on the track is adequate notice and warning to motorists. *Coleman* v. *Chicago, B. & Q. R. Co.*, 287 Ill. App. 483, 5 N. E. 2d 103; *Southern Ry. Co.* v. *Lambert*, 230 Ala. 162, 160 So. 262; *Dolan* v. *Bremner*, 220 Iowa 1143, 263 N. W. 798; *Crosby* v. *Great Northern Ry. Co.*, 187 Minn. 263, 245 N. W. 31; *Pennsylvania R. Co.* v. *Huss,* supra; *Jarvella* v. *Northern Pac. Ry. Co.*, 101 Mont. 102, 53 P. 2d 446; *Ullrich* v. *Columbia & C. Ry. Co.,* 189 Wash. 668, 66 P. 2d 853;

*Mabray* v. *Union Pac. R. Co.*, D. C. Colo., 5 F. Supp. 397; 3 Blashfield's Cyc. of Automobile Law, Permanent Edition, op. cit., § 1798, p. 199; Huddy, op. cit., Sec. 31, p. 107.

But respondents in the instant case maintain that surrounding conditions were such that appellants' employees were negligent in blocking the crossing and failing to give warning of that fact to motorists, and have cited many cases. We have carefully examined all of those cases and find that they are distinguishable, with one or two exceptions, because of the fact situation involved. Several were "trap" cases where persons were led into danger by reliance on signals or warnings which were customarily given but which were not given at that time; some involved extreme weather conditions of falling snow or dense fog; some turned on the point that because of the obscurement of the track by a cut or because the road was a main artery the train crew should have provided some warning; in several, if not all, there were no lights on the cars which blocked the street; some cases note the unlawful blocking of the highway. We recognize, however, that in South Carolina and Georgia, and possibly in Maine, Missouri, and Louisiana there is credible authority that whether or not the stopping of a train athwart a roadway in the normal execution of a railroad company's business is negligence, is a question of fact for the jury. On the other hand, there is almost overwhelming authority from other jurisdictions that halting a train across a highway in the normal execution of a railroad company's business, even though no warning to motorists is given, is not negligence on the part of the railroad unless there is some further circumstance to charge it with the duty to warn motorists. We are persuaded that the latter is the better holding and that it is more in keeping with the duties of all motorists to look and listen before crossing a railroad track of which they have notice or, because of surrounding conditions or warning signs, should have notice.

However, each case must be determined in the light of all the surrounding circumstances peculiar to that time and

place. *Pippy* v. *Oregon Short Line R. R. Co.*, 79 Utah 439, 11 P. 2d 305. What then, were the conditions which obtained on the morning of January 23, 1937 at First East Street in Price? From the record we learn that the collision occurred at about 4:15 a. m. There was however, a street light burning about 150 feet from the intersection and the moon was up. The weather was very cold (about 20 degrees below zero), there was snow on the ground and there was some "frost" in the air and on objects including the caboose but visibility was sufficiently good that a witness on a parallel street saw the stopped train from approximately two blocks distance. The caboose, which was entirely across the street, was about 40 feet long and 12 feet high, with the body elevated only about 3½ feet above the rails. Its marker lights on the two rear corners were burning and there was a light on top of the cupola in the center of, and protruding above the body of, the caboose. On a clear night, railroad marker lights can be seen for about a mile. The caboose and the rest of the train were on a switch track onto which the train had been backed when the locomotive developed some trouble. Testimony as to how long it had been there varies from 1½ minutes to 15 or 20 minutes. It appears, however, that the train crew was taking reasonable steps to cut the train and clear the intersections. The evidence is that the conductor, upon ascertaining that the engineer was not receiving the lantern signal to pull ahead, started immediately to walk toward the engine to notify the engineer to pull the caboose off the crossing; that he had gone only about half the length of the train when the collision occurred. There appears, therefore, to have been no undue delay by the train crew in attempting to clear the crossing. No violation of any law or ordinance by the Appellants is charged. Moreover, this train was standing on a track in a city where trains frequently stop and where one would reasonably expect a train to be. This is not a case of a train standing across a road far out in the country where one would not reasonably expect a train to stop.

There is no dispute that everyone in the automobile knew that they were coming to a railroad track.

From the evidence submitted it appears plain that no negligence on the part of the railroad employees has been shown. While a railroad company is not excused from exercising reasonable care to prevent collisions and while many conditions may exist which should put them on notice that motorists might be endangered and therefore enjoin on them the positive duty to give warning, yet when they are using their right-of-ways in a careful and lawful manner they have a right to presume that motorists on crossing streets will proceed carefully and lawfully and will drive with their cars in such control as to be able to stop within the distance at which they can see objects ahead. See *O'Brien* v. *Alston*, 61 Utah 368, 213 P. 791; *Nikoleropoulos* v. *Ramsey*, 61 Utah 465, 214 P. 304; *Hansen* v. *Clyde*, 89 Utah 31, 56 P. 2d 1366, 104 A. L. R. 943. See, also, *Dalley* v. *Mid-Western Dairy Products Co.*, 80 Utah 331, 15 P. 2d 309, which went far beyond the cases cited in that it held that even as to objects *unlawfully* on the highway, motorists must so run their cars as to be able to stop in time to avoid striking such objects. We hold in conformance with what appears to us to be the great weight of authority that the presence of a train on a track itself furnishes a warning to motorists, unless conditions exist which should cause the train crew to realize that motorists might not see the cars, in which event some additional warning may be required to satisfy the standard of due care.

If it were not for the lights on the cupola and on the ends of the caboose, there might be evidence to go to the jury on this latter principle. It was testified that the caboose was frosted; that it was blended into the frosty atmosphere and into the snow on the street, but no explanation was given as to why the lights on the cupola and ends were not seen. The end lights were visible to the occupants of the car after they got out. As far as

the testimony shows, the position of the caboose on the crossing would put the light on the cupola at such point above the crossing that the train crew might reasonably depend on motorists seeing it. There is, therefore, no evidence to show that the train crew should have realized that these lights were not sufficient warning of an obstacle.

In *Haarstrich* v. *Oregon Short Line Railroad Co.*, 70 Utah 552, 262 P. 100, a collision case in which an automobile struck a slowly moving, unlighted freight train, we held that the negligence of the railroad, if any there was, did not proximately contribute to the collision because the actual presence of a train on a crossing is notice and warning to motorists regardless of the absence or presence of other warning signs or signals. *Schmidt* v. *Chicago & Northwestern Ry. Co.*, 191 Wis. 184, 210 N. W. 370.

The instant case appears to be analogous to that of *Rowe* v. *Northern Pac. Ry. Co.*, 52 Idaho 649, 17 P. 2d 352, 353, in which the Idaho Supreme Court held:

· "The presence of the box car merely presented a condition: it was not the proximate cause of respondent's mishap."

Because the evidence fails to show any negligence on the part of appellants which proximately contributed to the collision, the District Court should have granted their motion for a directed verdict. Having decided this point it is unnecessary to discuss the other points raised by appellants and, likewise, it is unnecessary to discuss the cross-assignment of errors made by respondents.

Judgments reversed. Costs to appellants.

MOFFAT, C. J., and LARSON, McDONOUGH, and PRATT, JJ., concur.