277 F.2d 830
 Tony LOPEZ, Patsy Lopez, an incompetent, by her Guardian ad
Litem, Tony Lopez; Lorencita L. Archuleta; and
Cresencio Archuleta, a minor, by
Lorencita L. Archuleta, his
General Guardian, Appellants,
v.
DENVER & RIO GRANDE WESTERN RAILROAD COMPANY, a corporation, Appellee.
 No. 6223.
 United States Court of Appeals Tenth Circuit.
 March 21, 1960.
 
 Cullen Y. Christenson (of Christenson, Novak, Paulson & Taylor), Provo, Utah, for appellants.
 Grant H. Bagley (of Van Cott, Bagley, Cornwall & McCarthy), Salt Lake City, Utah, for appellee.
 Before MURRAH, Chief Judge, LEWIS, Circuit Judge, and WALLACE, district judge.
 MURRAH, Chief Judge.
 
 
 1
 This is an appeal from a summary judgment for the defendant railroad in a Utah crossing accident case. Plaintiff-appellants are the driver of the automobile, two of his three passengers, and the child of the third passenger who was killed in the collision. Appellee's motion to amend its petition for removal to supply sufficient allegations of citizenship and principal place of business existing at the time of commencement of this action is hereby granted, and diversity jurisdiction is therefore present. See 28 U.S.C. 1653; Note, 13 Okla.L.Rev. 73 and authorities cited therein.
 
 
 2
 We know of course that a summary judgment is appropriate only when no genuine issue of fact survives the pretrial proceedings. See Champlin v. Oklahoma Furniture Manufacturing Co., 10 Cir., 269 F.2d 918; Alaniz v. United States, 10 Cir., 257 F.2d 108; Hunt v. Pick, 10 Cir.,240 F.2d 782. All bona fide factual disputes are to be decided by the triers of fact. And the power to decide facts carries with it the power to draw all reasonable inferences from established facts. This is especially true in matters involving negligence and proximate cause, which are necessarily gauged by the behavior of the reasonable man. See Wilkerson v. McCarthy, 336 U.S. 53, 61-64, 69 S.Ct. 413, 93 L.Ed. 497; Nelson v. Brames, 10 Cir., 253 F.2d 381; Globe Cereal Mills v. Scrivener, 10 Cir., 240 F.2d 330; Chicago, Rock Island & Pacific Railroad Company v. Hugh Breeding, Inc., 10 Cir., 232 F.2d 584; Independent-Eastern Torpedo Co. v. Ackerman, 10 Cir., 214 F.2d 775. Questions like these become matters of law to be decided summarily or after trial only when reasonable minds could not differ as to the facts and the inferences to be drawn therefrom. Thus, a summary judgment, like a directed verdict, is unwarranted unless the court is convinced from the proof that the jury could arrive at but one conclusion, and if it did otherwise the court would be compelled to render judgment n.o.v. See Transcontinental Bus System, Inc. v. Taylor, 10 Cir., 265 F.2d 913; Commercial Standard Insurance Company v. Feaster, 10 Cir., 259 F.2d 210; Kippen v. Jewkes, 10 Cir., 258 F.2d 869.
 
 
 3
 The appellants here do not contend that all of the pertinent facts were not in. They simply say that they presented a jury question, i.e., that the established facts were susceptible of an inference of actionable negligence on the part of the railroad. If therefore the established facts do not give rise to a permissible inference of actionable negligence, the summary judgment was appropriate and ought to be affirmed.
 
 
 4
 There is nothing new or novel about a railroad crossing accident case, but like people's faces, no two are indistinguishably alike. And so we come to the facts of this case, as they appear most favorably to appellants. About midnight on a Utah state highway in open country, appellant Lopez drove his automobile into the middle part of a 36 car freight train. The crossing was roughly 90 degrees, and the highway from whence the automobile came was straight for more than 1,400 feet with no obstructions to impair a full view of the tracks. The usual crossbuck sign was by the crossing, and 447 feet west of the crossing was the usual yellow highway warning sign. Appellants claim that they did not see the yellow highway sign because they were passing another vehicle at that place in the road, and that they did not see the train until they were about 50 feet from it. The speed of the automobile at the time of the collision is estimated to be 50 to 60 miles per hour, and that of the train approximately 20 miles per hour. The driver says that his lights were still on low beam from passing the other vehicle.
 
 
 5
 Because the railroad necessarily has the right of way at such crossing it has the reciprocal duty to give due warning of the existence of the crossing, the approach of its trains and, finally, the presence of its trains upon the crossing. That which constitutes reasonable warning in each instance depends upon the conditions and circumstances at the particular crossing. Interstate Motor Lines v. Great Western Ry. Co., 10 Cir., 161 F.2d 968, 972; also quoted in Union Pacific Railroad Company v. Snyder, 10 Cir., 220 F.2d 388, 391. See also Pippy v. Oregon Short Line R. Co., 1932, 79 Utah 439, 11 P.2d 305. But here the collision was with the middle of a 36 car freight, negating the significance of the approach of the train; and no claim is made that adequate warning of the existence of the crossing was not given by the customary crossbuck and approach warning signs. Appellants' claim, and our consideration, is therefore limited to the contention that the railroad could be guilty of negligence in failing to warn of the presence of this particular train upon the crossing under the conditions and circumstances then existing.
 
 
 6
 Usually the presence of railroad cars on the crossing is sufficient warning to the prudent motorist, because he is expected to see them and to be able to stop within his range of vision. And so, ordinarily one who collides with passing or standing railroad cars is precluded from recovery as a matter of law. See Olson v. Denver & R.G.W.R. Co., 1940, 98 Utah 208, 98 P.2d 944; Holt v. Thompson, 10 Cir., 115 F.2d 1013; Wm. A. Smith Const. Co. v. Brumley, 10 Cir., 88 F.2d 803. But consistent with the duty to warn commensurately with the hazards involved, extraordinary circumstances may require the railroad to give special warning of the presence of the train on the crossing. Ibid.
 
 
 7
 Recognizing such to be the law, appellants take the position that an extrahazardous condition existed at this particular crossing, which imposed on the railroad the duty to give special warning of the presence of its train. One condition and one circumstance are advanced as a premise for appellants' contention. The condition is the existence of a downgrade approach to the crossing. The first 50 feet of the westerly approach is at 1/10 of 1%; the next 50 feet is at 1%; the next 100 feet is at 2%. But this fact, standing alone, is of no significance for if it presents '* * * a factual question of peculiar danger requiring special warnings, it would be difficult indeed to conceive of a country railroad crossing which would not be peculiarly dangerous. All crossings then are peculiarly dangerous and the exception becomes the rule. If such is to be the policy of the law, the Legislature, not the courts, ought to declare it.' Union Pacific Railroad Company v. Snyder, supra. (220 F.2d 392.)
 
 
 8
 The circumstance advanced by appellants is found in the uncontroverted affidavit of a highway patrolman that proper automobile lights on low beam would not illuminate cars on the track until within 138 feet of the track, and that the normal stopping distance for a vehicle traveling 50 miles per hour on the surface involved is 159 feet, considering both normal reaction time and braking time. This circumstance attempts to explore the negligence of the railroad by showing the existence of a factual question relating to the prudence of appellant's own conduct. A non sequitur results. The most prudent of drivers may be involved in accidents without actionable blame being attached to others and the burden of proving negligence cannot be met by negating subjective blame in the accuser. Indeed if the circumstance here present, i.e. that appellant driving on low beam could see the presence of a train only at 138 feet and could not stop within that distance while traveling 50 m.p.h., is pertinent to the question of whether or not this crossing is inherently dangerous, such a view would be carried far beyond the instant case. The Utah statute (41-6-134(b), Utah Code Supp.1959) sets a minimum standard for low beam lights upon a straight, level and unlighted highway thus:
 
 
 9
 'There shall be a lowermost distribution of light or composite beam, so aimed and of sufficient intensity to reveal persons or vehicles at a distance of at least 100 feet ahead * * *.'
 
 
 10
 We find no error in the judgment below and it is accordingly affirmed.