Argued May 9; reversed June 26, 1945

# CASE *v.* NORTHERN PACIFIC TERMINAL CO.

## (160 P. (2d) 313)

Before Belt, Chief Justice, and Rossman, Kelly, Bailey, Lusk, Brand, and Hay, Associate Justices.

*Wm. P. Lord,* of Portland (Wm. P. Lord and Ben Anderson, both of Portland, on the brief), for appellant.

*A. C. Spencer, Jr.,* of Portland (A. C. Spencer, Jr., and Maguire, Shields & Morrison, all of Portland, on the brief), for respondent.

BELT, C. J.

This is an action to recover damages for personal injuries sustained in a railroad crossing accident. At the conclusion of the plaintiff's case in chief, the court allowed the defendant's motion for a judgment of involuntary nonsuit for the reason that there was no substantial evidence tending to show negligence on the part of the defendant. From such judgment the plaintiff appeals.

On demurrer to the evidence the record must be viewed in the light most favorable to the plaintiff. Hence the statement of the facts will be made in keeping with this fundamental principle of law.

On March 28, 1943, at about six o'clock in the morning, plaintiff was riding, as an invited guest, in an automobile driven by his father en route to Oregon City where they expected to do some fishing. They were proceeding in a southerly direction on a four-lane arterial highway—Northwest Front Street in the city of Portland—at the time of the accident. This street ordinarily has heavy traffic, as it is an industrial section of the city and parallels the west bank of the Willamette river where there are several large warehouses and docking facilities. During the war this area has been particularly active. However, at the particular time and place in question, the vehicular traffic was very light. There are various spur tracks from freight yards which cross the highway at grade and approximately at right angles. On one of these spur tracks, leading to the Oceanic Terminal and near the Willamette Iron and Steel plant, the defendant company was engaged in a switching operation by backing a gondola or coal car in an easterly direction across the street. It was a dark and rainy morning but the crossing was well lighted. Relative to the flood lights at the crossing and the glare of the lights from the steel plant, plaintiff's father said that they were a hindrance and that it would have been better had the crossing not been so lighted as he could then have depended upon the headlights of his car. There were no obstructions to view except a large billboard adjacent to the street and on the west side thereof. The automobile in which plaintiff was riding at about 25 miles an hour was on the right side of the street and in the lane next to the yellow center line.

Mr. Russell Case, the driver of the car, testified in substance that he first saw the train about 25 feet

from him slowly backing across the track. He said, "I didn't see the train until I hit it." He saw no man waving a red lantern as he approached the crossing but, immediately before the impact, a flagman suddenly appeared in the street waving a red lantern. Case thought the flagman came from behind the sign board. He said it looked to him "like he just jumped out there —that is the way I seen it—and started to wave a light." No whistle was heard as the engine approached the crossing but witness was unable to say whether a bell was ringing or not.

Mr. Case also testified that he had driven over this street every day for a period of years and was well acquainted with the switching operations at such crossing. Objection was sustained to the questions about the practice of the defendant in having a flagman at night with a red lantern to "wave down traffic" at this crossing, on the theory that there was no evidence of its being particularly hazardous and hence no duty devolved upon the defendant to maintain any flagman thereat. Plaintiff thereupon duly made offer of proof, which was rejected.

Plaintiff thus testified as to how the accident occurred:

"Well, as I saw it, we was coming up the highway, and this box car or gondola just seemed to pop out of no place, and there wasn't a brakie or anything on the highway at that time—well, just about instantaneously it happened the brakie just jumped out on the highway. I took my eyes off of him and looked at the end of the box car and it just came right at me."

"Q. (By Mr. Lord) Where did you see the brakie? A. Well, he came off from the side of the highway.

\* \* \* \* \*

"Q. Now taking that billboard as a landmark where would you say he was coming from with respect to that billboard? A. He was behind the billboard. He just jumped right out there on to the highway.

"Q. What did he have? A. I didn't see him carrying anything.

"Q. Did he have any light or lantern? A. When I saw him he didn't. He might have had the lantern off at the time."

▇▇▇ On this appeal we are not concerned with the alleged contributory negligence of the driver. Neither is it contended that any negligence of the driver can be imputed to the plaintiff. The precise question is: Can it be said as a matter of law that the defendant company exercised reasonable care in backing this train across the street without having any flagman or brakeman on the end of the coal car to warn oncoming traffic? We think the question is one for the determination of the jury. Ordinarily, whether a crossing is particularly hazardous is for the jury. It is only when all reasonable minded persons would conclude from the evidence that the crossing is not extra hazardous that a court would be justified in so declaring as a matter of law. As stated in 44 Am. Jur. 747, Railroads § 506:

" * * * Whether or not a given crossing is unusually dangerous is a question for a jury, unless only one conclusion could be drawn by all reasonable men from the evidence thereto."

Also see numerous authorities in note 16 A. L. R. 1277, among which is *Russell v. O. R. & N. Co.,* 54 Or. 128, 102 P. 619. It is well settled that, unless the crossing is particularly hazardous, there is no legal duty on the part of the railroad company to maintain lights,

gates, or watchmen for the protection of travelers upon the highway: *Irwin v. Southern Pacific Co.*, 163 Or. 72, 95 P. (2d) 62; *Meaney v. Portland Electric Power Co.*, 131 Or. 140, 282 P. 113.

In *Grand Trunk Ry. Co. v. Ives*, 144 U. S. 408, 36 L. Ed. 485, 12 S. Ct. 679, the court said:

" * * * As a general rule, it may be said that whether ordinary care or reasonable prudence requires a railroad company to keep a flagman stationed at a crossing that is especially dangerous, is a question of fact for a jury to determine, under all the circumstances of the case, and that the omission to station a flagman at a dangerous crossing may be taken into account as evidence of negligence; although in some cases it has been held that it is a question of law for the court. * * * "

■ It is fundamental that the degree of care required by law to be exercised in giving notice or warning of a train approaching a public crossing is commensurate with the danger involved. Backing a train across an arterial street in a busy industrial section of a city on a dark and stormy morning, under the conditions shown to exist herein, might well be considered a switching operation requiring a flagman in the street or some other reasonably adequate precaution for the protection of vehicular traffic. At least, a jury might reasonably so conclude.

■ The rule requiring the adoption of extraordinary means to signal the approach of trains at crossings of more than ordinary danger has been frequently applied in cases involving backing trains over crossings: *Green v. Southern Pacific Company,* 53 Cal. App. 194, 199 P. 1059; *Illinois C. R. Co. v. Coley,* 121 Ky. 385, 89 S. W. 234, 1 L. R. A. (N. S.) 370; *Grant v. O. R. & N. Co.,* 54 Wash. 678, 103 P. 1126, 25 L. R. A.

(N. S.) 925; 52 C. J. 213, Railroads § 1811. Also see note 17 Ann. Cas. 982. Obviously, greater care must be exercised for the protection of the public during such switching operations than would be required if the train were moving forward: *Battishill v. Humpherys*, 64 Mich. 494, 31 N. W. 894.

■■ Whether due care required a flagman or some other reasonably adequate means of warning persons using the highway of the approach of a train depends upon the character of the crossing. If the crossing, under all the circumstances, might reasonably be considered more than ordinarily hazardous, the failure to exercise such precautions would justify a finding of negligence. After all, the degree of care to be exercised by the defendant company is determined by what an ordinarily prudent person engaged in the same kind of business would have exercised under the same circumstances.

■ Here, we are concerned with a crossing accident in a city, resulting from a switching operation while the train was backing across a street generally heavy with traffic. It was at night and the weather was stormy. The company had reason to anticipate vehicular traffic on this arterial highway. The view was, to some extent, obstructed by the sign board adjacent to the track. In the light of the record, we think there is some substantial evidence tending to show that the crossing was unusually hazardous and therefore it would be a question of fact for the jury to determine whether the railroad company had failed to exercise reasonable care.

It is urged by defendant that there is no testimony tending to show that the view was obstructed at this crossing, or that either the switch engine or the coal

car was hidden from view by the sign board. We must remember that this accident occurred at night time. The photographs introduced in evidence by plaintiff —taken by a photographer representing the defendant company—show the location of the sign board and its size. There is evidence that, as the plaintiff approached the crossing, neither he nor his father saw any look-out with a light, on the front end of the coal car. In reference to the sign board, the plaintiff testified that he believed the east end of the coal car was behind the sign board immediately before the car came into view. Plaintiff also testified that he was watching the highway as they approached the crossing and we think a fair inference can be drawn from the evidence that the sign board—removed since the accident—might have obstructed the view.

We think the trial court erred in excluding evidence that the defendant customarily maintained a flagman with red lantern at this crossing when engaged in switching operations at night. Plaintiff and his father had traveled this street every day for years and it was proper for them to state the usual practice of the defendant in backing cars over the crossing and their reliance thereon. It was also in order to show the conditions existing at the time of the accident, such as absence of automatic signals. We do not mean to imply that the failure to maintain such automatic signals would speak of negligence, if other reasonably adequate precautions were taken by the company to protect the traveling public, but we think the jury was entitled to know existing conditions in order to determine whether the company failed to exercise due care. Whether a crossing is extra hazardous depends upon many factors. Obviously, each case must be

viewed in the light of its own particularly factual situation.

■ Evidence as to custom of having flagmen at other crossings different in character from the one involved herein should not be received. As stated in 52 C. J. 227, Railroads § 1817:

"The liability of a railroad to an individual is determined by the law applicable to the crossing at which he is injured, and a failure to give the signals required for another crossing is ordinarily no breach of duty to one who is at a crossing for which no signals are required. * * * "

■ Defendant contended it was proper for the court to say as a matter of law that the crossing was not particularly hazardous and therefore there was no obligation to have a flagman, yet the evidence tended to show that the defendant assumed the obligation of having a flagman at such place to wave down traffic during switching operations. A photograph taken by defendant of the scene of the accident shows, as noted thereon, "two switchmen standing at same location as were the two terminal switchmen at time of ax". Another photograph taken by defendant shows, as noted thereon, "switchman at end of car and same position switchman was at time trying to flag auto."

In 44 Am. Jur. 765, Railroads § 521, it is said:

"The fact that a railroad company has voluntarily assumed to maintain a particular safeguard at a crossing, or has customarily performed a particular act of warning, so that the public has become acquainted with the safeguard or the practice, raises, the question of the duty of the railroad to continue the safeguard or the practice or to give adequate notice to the public of its discontinuance. The cases generally agree that discontinuance alone

is not negligence, but that it is a circumstance that may be considered along with the other facts and circumstances of the case in determining whether the railroad company was negligent. The railroad must use care that the withdrawal or abandonment of the customary duty does not operate as a trap. In other words, the railroad company must use due care in abandoning or discontinuing the customary duty. * * * ."

That the above rule is well established, see Elliott on Railroads (3d. Ed.) § 1651, and cases in notes 17 Ann. Cas. 982 and 16 A. L. R. 1285.

■ The cases involving railroad crossing accidents are well reviewed and considered in *Fish v. Southern Pacific Company*, 173 Or. 294, 143 P. (2d) 917, 145 P. (2d) 991, and there is no need of repetition. In some cases the court held, as a matter of law, that the crossing involved was not unusually hazardous while, in others, it was a jury question, the decision depending upon each particular factual situation. The instant case does not involve a main line crossing accident. Neither did it occur on a crossing over a country road. Here, was a switching operation over an arterial highway in a populous city generally having heavy traffic. The mere fact that travel was extremely light over the street at the particular time this accident occurred does not, in itself, remove it from the category of unusually hazardous crossings. The duty of the railroad company depended rather upon the general traffic conditions of the street: *Northern Pac. Ry. Co. v. Moe*, 13 F. (2d) 377.

The judgment is reversed and the cause remanded for a new trial.