The plaintiffs, Hugh Arnold and his wife Mrs. Mildred Arnold, brought this suit against the Illinois Central Railroad Company for damages in the total sum of $131,741.90. They filed a joint petition but claimed separate items of damage, the husband claiming $86,741.90 and the wife claiming the sum of $45,000. The trial resulted in a judgment in favor of Mr. Arnold for the sum of $18,719.40 and in favor of his wife in the sum of $10,000. The defendant appealed from the judgment.
The plaintiffs alleged in their joint petition that they were driving north on U.S. Highway No. 51, just outside of Hammond, between 5:15 and 5:30 o'clock A.M., April 19, 1942, when the automobile in which they were riding and which was being driven by Hugh Arnold ran into the side of an oil tank car stopped on the track of the railroad which crosses the said Highway at right angles, the railroad running from Baton Rouge to Hammond; that the said tank car was a part of a freight train which was stopped, blocking said highway; that it was still dark and the weather was so foggy that plaintiff Arnold could not see the tank car across the highway on account of its color, the condition of the road, and the poor visibility because of the darkness and fog; that plaintiff Hugh Arnold had his lights dimmed in order to deflect the rays of his headlights more directly upon the pavement in front of him. The petition alleges that the railroad was guilty of negligence in leaving said train parked across the much traveled highway for several minutes; in failing to have adequate warning signals, lights and other devices to notify motorists of the crossing; in failing to station a flagman at the crossing to give warning to oncoming traffic; in failing to sound the whistle and bell as required by law, and in failing to have a sufficient train crew in charge of the train so as to give proper warning, particularly in view of the condition of the weather, time of day, and conditions then prevailing.
The railroad denied any negligence on its part and in the alternative made a special plea of contributory negligence against both plaintiffs in that they were negligent in failing to see the car across the track and in failing to take the necessary precautions to keep from striking the car; that Hugh Arnold was driving at an excessive speed under the circumstances, and did not stop, look and listen before crossing the track. *Page 78 
During the trial of the case the defendant attempted to prove that the Illinois Central Company did not operate this train and was not liable for the alleged negligence of the trainmen. However, this defense has been abandoned, and it is not necessary to discuss it any further.
There are four principal questions involved in the case: First, was the railroad guilty of negligence; second, if so, was Hugh Arnold guilty of such contributory negligence as to bar his recovery; third, was Mrs. Arnold guilty of any independent negligence so as to bar her recovery; and, fourth, if either plaintiff is entitled to recover, was the award correct? These questions will be discussed in the order named.
Negligence, vel non, of the Railroad.
It is not denied that on the morning of the accident the railroad parked a train of cars across U.S. Highway No. 51, this train consisting of some 86 cars, the oil tank car across the highway being near the center of the train. The train was going into Hammond from Baton Rouge, and the engineer pulled the train across the highway in order that the conductor who was riding in the caboose could walk to a telephone booth some 200 feet west of the crossing and get instructions relative to bringing the train into Hammond. The conductor and the flagman got out of the caboose and walked toward the crossing on the north side of the train. After the train had stopped for a period estimated all the way from one minute to ten minutes, the engineer backed up the train so that the engine was just west of the crossing. It was while the train was stopped on the crossing (whether for one minute or ten minutes) that the Arnold car ran into the side of the tank car across the highway, injuring both Mr. and Mrs. Arnold rather severely, and almost demolishing the Chevrolet car in which they were riding. The fourteen year old daughter of plaintiffs was in the Arnold car but seems to have escaped unhurt.
It is conceded that there were no mechanical lights at the crossing, nor was there any flagman with a warning signal to protect the crossing. There were five trainmen on the train, the engineer, fireman and brakeman were in the cab of the engine, and the conductor and flagman were in the caboose. So that at the time the train was stopped across the highway, there were no trainmen within 40 cars of the crossing — some 1500 feet. Of course, the trainmen did not see the Arnold car when it crashed into the train, but the conductor and flagman had walked up part of the way to the telephone booth from the caboose, and reached the scene of the accident soon after it occurred.
The usual "Louisiana Law Stop" sign was placed on both approaches to the crossing, the one on the south being something over 40 feet from the crossing, and placed some six or seven feet to the east of the pavement. There was also a highway marker or reflector with the letters "R.R." some 150 yards south of the crossing, and, while this point is disputed, there is some evidence to the effect that a cross was painted on the pavement with the letters "R.R." between the arms of the cross. The principal question to determine is whether or not on account of the darkness and fog it was the duty of the railroad to take any extra precautions to protect traffic on the highway, other than the signs above mentioned.
The evidence shows that there was a heavy fog in the area of this crossing at the time of the accident, but the density of the fog and the extent of visibility varies in the testimony. Some of the witnesses testified that the fog was so dense that a person could see only a few feet, while others stated that, while there was a fog, it was not unusually heavy and visibility was not seriously impaired. The preponderance of the evidence shows that the darkness and fog seriously affected visibility and rendered driving an automobile rather hazardous.
[1] In the case of Plummer v. Gulf, M. N. R. Co. et al., La. App., 153 So. 322, 323, the law as to the duty of a railroad in blocking a crossing was stated as follows:
" 'The general rule of law on this point is that unless there are some unusual conditions of danger it is not necessary for railroads to station a flagman or other person with a lantern at the approach of a crossing to warn drivers of automobiles of the blocking of such crossing by railroad *Page 79 
cars when such cars are placed across the highway on a switch or track in the usual and legitimate process of switching and operating the business of the railroad.' "
There were no unusual circumstances found to exist in that case which required the railroad to station a flagman at the crossing, or other signals, to warn approaching motorists. The same rule was announced and followed in the case of Domite v. Thompson et al., La. App., 9 So.2d 55, and in that case the court found as a fact that there was not sufficient fog or interference with visibility to make an exception to the rule that railroad cars across a highway are sufficient notice of the blocking of the highway to a motorist with proper lights and driving in a proper manner.
Counsel for plaintiff cite and largely rely on the case of Squyres v. Baldwin et al., 191 La. 249, 185 So. 14. In that case the Supreme Court found that, owing to a heavy snow and poor visibility at a crossing on a main highway, it was the duty of the railroad to take extra precautions to protect traffic on the highway when blocking the highway in switching gravel cars over the crossing. It was shown in that case that the driver of the car could see only 25 or 30 feet ahead of him. His headlights were in good condition. The court said in that case: "The low, black gravel cars were rendered a dull grey color in appearance, by reason of the snow which blanketed them, and blended perfectly with the dull, leadened background."
The evidence in the present case shows that the fog was so dense that the driver of a car could not see more than 35 or 40 feet, and if we are to apply the reasoning employed in the Squyres case, it was the duty of the railroad to protect the crossing by having a flagman stationed there with a lantern to warn approaching traffic while the crossing was being blocked by the train, or at least provide some warning signal more than the signs which it was difficult for a motorist to see. The railroad employees knew this crossing to be used frequently as it is on one of the main thorough-fares of the State. They also knew that the fog was heavy and visibility poor, but seem to have remained content to stay in their respective places in the engine and caboose while their train was blocking the highway a quarter of a mile away for at least a few minutes — probably two or three minutes — during which time they should have reasonably expected several automobiles and trucks to approach the crossing.
The preponderance of the evidence indicates that the bell was rung and the whistle blown, but this question is not very important. If the whistle was not blown and the bell was not rung, this could hardly have had anything to do with the situation as the engine was a quarter of a mile east of the crossing when the accident happened, and at the time the engine crossed the highway, plaintiffs were too far away from the crossing to have been affected by the blowing of the whistle or the ringing of the bell.
Contributory Negligence of Hugh Arnold.
[2,3] While we are of the opinion that the railroad was guilty of negligence in not properly protecting the crossing, we are also of the opinion that Hugh Arnold was guilty of such contributory negligence as to bar his recovery. Arnold left Orange, Texas, around midnight with his wife and child to attend the funeral of his grandfather at Brookhaven, Mississippi. He says he traveled 60 to 70 miles per hour from Orange to Baton Rouge as there was no fog and the night was clear; that he reached Baton Rouge around three o'clock in the morning and stopped for ten or fifteen minutes in Baton Rouge at the home of his sister-in-law. He left Baton Rouge a little after three o'clock, and when six or seven miles out from Baton Rouge on the Hammond road, he struck the fog which was heavy at places and at other places it be-became less dense. He drove from 13 to 35 miles per hour depending on the thickness of the fog, and after stopping a few minutes at Albany, he reached the junction of U.S. Highway 51 just outside of Hammond between 5 and 5:30 o'clock in the morning. He says it was necessary to put on his dimmers in order to see the pavement ahead; that he could see 30 to 40 feet; that he was going about 22 miles per hour; that he was within 9 to 12 feet of the train before he saw it, and it looked like a ditch across *Page 80 
the pavement; that he applied his brakes, and tried to stop, but crashed into the tank car. He says his brakes and lights were in good order.
A few weeks after the accident, Arnold signed a written statement prepared by the claim agent of the railroad in which he said he was going 30 to 35 miles per hour at the time of the accident, but in his testimony he endeavored to explain this statement by saying that he told the claim agent that he traveled 13 to 35 miles per hour from Baton Rouge to the scene of the accident. The car driven by Arnold was seriously damaged by the impact with the train, indicating that it must have been going at a good rate of speed when it struck the train. There is evidence to show that when the train began backing up after the impact, the train pulled or struck the car and caused some of the damage to the car. But even allowing for some further damage caused by the train after the impact, the damage to the car indicates that most of it was caused by the impact. While plaintiff Arnold may not have been going 30 to 35 miles per hour, the evidence justifies the conclusion that he was going more than 22 miles per hour at the time of the accident.
A witness, Provetore, testified that he was driving north in a truck on the highway at about 20 miles per hour when the Arnold car passed him about two blocks from the crossing going 30 to 35 miles per hour. The witness heard the crash after Arnold passed. He says that he could see the train across the track 30 to 35 feet ahead of him.
Arnold admits that he could see the pavement 30 to 40 feet ahead of him and that he could stop his car within a car's length (17 to 18 feet) going 22 miles per hour. Yet he did not see the tank car until he was right on it, and crashed into it with considerable force. It is true that the road makes a very slight rise just before reaching the crossing, and the lights of the automobile would be deflected somewhat under the tank car, but we are unable to understand why Arnold could not see as large an object as a tank car across the road if he could see the pavement 30 to 40 feet ahead of him. If he was going no faster than he claims and could stop his car in 17 or 18 feet, we see no reason why he should not have been able to avoid the accident. He was traveling at too fast a speed under the circumstances and was not keeping a proper lookout.
Contributory Negligence of Mrs. Arnold.
[4, 5] Mrs. Arnold was riding on the front seat by the side of her husband and says that she was watching the road. She did not see the train before the car struck it. The care required of a guest is not the same as that of the driver of the car. The driver has control of the car, and is in a better position to observe the road, regulate the speed, and judge the actions and movements of the car he is driving. Had Mrs. Arnold seen the train 35 to 40 feet before the car struck it, she would have had a right to assume that her husband saw it also and that he would take the necessary steps to avoid colliding with it. She was under no duty to warn him until it was evident to her that he was not aware of the danger, and it would have been too late for her warning to be effective had she seen the train 35 or 40 feet ahead. See Delaune v. Breaux, 174 La. 43,139 So. 753, and Churchill v. Texas P. R. Co., 151 La. 726, 92 So. 314.
[6] While Mrs. Arnold says she was looking ahead for cattle which might be on the road, she did not see the train across the track. She was not in a position to judge the speed of the car, the visibility from the driver's seat, nor the distance required to stop, to the same extent as could be her husband who was driving the car and on whom rested the duty of keeping a close lookout from his seat, as well as keeping constantly in mind his speed, and being prepared at all times to stop his car. Finding that Mrs. Arnold was not guilty of such contributory negligence as to bar her recovery, it follows that she is entitled to recover for her injuries, and we now proceed to the last question of whether or not the amount awarded her by the trial court is correct.
[7] Mrs. Arnold received rather severe cuts and lacerations on her face and these wounds bled profusely. Her left leg was bruised and twisted, and she was confined *Page 81 
to her bed for some two weeks, after which she used crutches for four or five weeks. There were left some scars on her face which have some disfiguring effects. It is claimed that the accident caused some disturbance to her menstruation. There is some dispute among the medical opinions as to whether or not the accident caused the menstrual disturbance, however, as it appears that she had no disturbances before the accident but thereafter her menstruations became more scanty and irregular, it is reasonable to assume that the accident did affect her in this respect.
While Mrs. Arnold claims that her left leg is crooked between the knee and ankle and swells at times and gives her some pain, we think the preponderance of the medical evidence shows that she does not suffer any seriously permanent injuries. We think an award of five thousand dollars will adequately compensate her for her injuries.
For the reasons assigned, it is ordered that the judgment in favor of plaintiff Hugh Arnold against the defendant be and the same is hereby annulled and reversed, and it is now ordered that same is hereby annulled and reversed, and it is now ordered that the demands of said Hugh Arnold be rejected and his suit dismissed; that the judgment in favor of Mrs. Mildred Arnold against the defendant be and the same is hereby amended by reducing the award in her favor from the sum of ten thousand dollars to the sum of five thousand dollars, and as thus amended, the judgment in her favor is affirmed. It is further ordered that plaintiff, Hugh Arnold, pay one-half the costs of the suit, and the defendant, Illinois Central Railroad Company, pay the other half of the cost.