Argued January 4; reversed and remanded January 31; rehearing
May 17; former opinion sustained May 31, 1950

# FINN ET AL. v. SPOKANE, PORTLAND & SEATTLE RAILWAY COMPANY

214 P. (2d) 254

218 P. (2d) 720

*Alton John Bassett,* of Portland, argued the cause for appellants. With him on the briefs was William J. Crawford, of Portland.

*John C. Beatty, Jr.,* of Portland, argued the cause for respondent. With him on the brief were Hart, Spencer, McCulloch & Rockwood, and Manley B. Strayer, all of Portland.

Before LUSK, Chief Justice, and BRAND, BELT, ROSSMAN, HAY and PAGE, Justices.

BELT, J.

This is an action to recover damages to person and property resulting from a collision by plaintiff Finn's automobile with a train standing on a grade crossing at the intersection of Northwest Vaughn street and Northwest 22nd avenue in Portland, Oregon. The plaintiff insurance company is a party by reason of having paid the cost of repairing the automobile. At the conclusion of the plaintiff's case in chief, the defendant railroad company moved for a judgment of involuntary nonsuit on the grounds that: (1) there is no evidence tending to show negligence of the defendant; and (2) the plaintiff driver was guilty

of contributory negligence as a matter of law. From the judgment entered in compliance with this motion, the plaintiffs have appealed.

■ The motion—which is in effect a demurrer to the evidence—requires a statement of the facts in the light most favorable to the plaintiffs. They are entitled to the benefit of every reasonable inference that can be drawn from the evidence. If reasonable-minded persons would differ as to the inference to be drawn from the evidence, the question is one for the jury to determine. These elementary principles of law require no citation of authority.

Northwest Vaughn street is an arterial highway running east and west which intersects 22nd avenue at right angles. Vaughn street—which is surfaced with "black-top" pavement and was wet at the time of the accident—is a part of a trunk highway (U. S. No. 30) leading from Portland to Astoria. Ordinarily, heavy traffic moves over this street. At the southeast corner of the intersection the city maintained a traffic light which flashed "yellow" on Vaughn street and showed "red" on 22nd avenue. The train—consisting of an engine, a box car and a gondola car—was facing south on 22nd avenue. The engine and box car had crossed the intersection before stopping. It was the dark colored gondola car that blocked the intersection. There was no flagman, flare or other signal warning the traveling public of the presence of the train.

About 6:20 o'clock on the morning of January 17, 1947, the plaintiff driver, who was thoroughly familiar with the crossing in question, was driving his automobile at fifteen miles per hour east on the right side of Vaughn street en route to the Brooklyn railroad shops where he worked as a mechanic. It was a cold,

dark and foggy morning, and plaintiff had visibility of only thirty to forty feet. Plaintiff, after testifying about failing to see or hear any train—although he looked and listened for one—thus told how the accident occurred:

"A  *  *  * I come into that intersection, I didn't see the train; the only thing I could see—and I was looking for it all the way, although I had never seen one there before I knew there was a railroad track there and I knew that there was a caution light there but under the conditions I couldn't see it for the simple reason that that—there was a gondola car that was crossing the road and when I seen the train it was stopped. If it had been any other wise, if it had been going I think I could have seen it because I could have seen headlights through the breaks in the cars.
"  *  *  *

"Q Now what car of this train did you come in contact with?

"A It is the third car (gondola)."

On cross examination the plaintiff Finn testified:

"Q Now will you tell us a little more about what the weather conditions were?

"A Well, it was foggy that morning, it was kind of misting.
"  *  *  *

"Q How heavy was the fog?

"A Well, like I said about—visibility was about 30 or 40 feet.
"  *  *  *

"Q Now was this a high fog or a low fog?

"A It was pretty low.

"Q Could you see over the top of it, do you know?

"A No.
"  *  *  *

"Q You were about 15, 20 feet away when you actually saw the train?

"A That is right.

" * * *

"Q Do you have any explanation why you weren't able to see it until you were only 15 feet away?

"A Fog.

" * * *

"Q (By Mr. Strayer) Well, do you have any explanation, Mr. Finn, since you say that you could see 30 or 40 feet ahead of you, do you have any explanation of why you did not see the train until you were only 15 feet from it?

"A There is a difference in seeing a dark object in a fog and just seeing, visibility being a certain distance too.

" * * *

"Q Were you watching for trains?

"A I was to a certain extent, that I knew there was a railroad track there but I had never seen one there.

" * * *

"Q You had been crossing it every day for about a year, hadn't you?

"A Oh, it is longer than that; couple of years.

" * * *

"Q And when you saw the train then about 15 feet away you immediately applied your brakes?

"A That is right.

"Q And then you skidded straight forward into the train?

"A Straight forward."

(Note: Plaintiff said his brakes were in "perfect mechanical condition.")

" * * *

"Q You think you couldn't have seen it [caution light] over the top of the railroad car, you mean?

"A That is right."

Dominic DeSanta, who had been familiar with this crossing for the past eighteen years, testified that during that time he had only twice seen a train on this spur track. Mrs. Finn, the wife of the plaintiff driver, testified that she had never seen a train on the track.

■ The gravamen of the charge of negligence against the defendant railroad company is that it stopped its train, or some part thereof, on a crossing of an arterial highway without having a flagman or any signal to warn vehicular traffic that the highway was so blocked. In approaching the consideration of this question, it is well to keep in mind that the duty of those operating a train and a motorist using the highway is reciprocal. Neither the railroad nor motorist has an exclusive right to the use of the highway but must use it with due regard to the rights of the other. Of course, the railroad has the right of precedence at a crossing.

■■ It is well established that it is not negligence per se to stop a train on a crossing for a reasonable length of time. It is common knowledge that an emergency may arise requiring a train, or some part thereof, to be stopped on a crossing. In the instant case it does not appear from the evidence the reason why this black gondola car was stopped. Ordinarily, that would be a matter within the knowledge of the employees operating the train. It is hardly reasonable to assume that the plaintiff driver would know how long the train had been on the crossing prior to the accident or the reason for blocking the highway.

■ We think it is also clear in the light of the authorities that the railroad company would have the right to assume that a motorist using the highway would exercise due care to avoid striking a train standing

on a crossing. It seems equally plain that if unusual or extraordinary conditions exist at a crossing and by reason thereof there is a likelihood of injury to a motorist using the highway, even though he was exercising reasonable care, a greater duty would be imposed upon the railroad company. It will not do under such circumstances for the railroad company merely to say that the train itself is adequate notice of its presence and that those who use the highway must govern themselves accordingly.

■ Under ordinary conditions a train on a railroad crossing is adequate notice of its presence, and there is no duty to use flagmen, flares or other signals to warn a motorist of any danger, as it may be assumed that he will exercise due care to avoid injury. *Doty v. Southern Pacific Co.*, 186 Or. 308, 207 P. (2d) 131; *Case v. Northern Pacific Terminal Co.*, 176 Or. 643, 160 P. (2d) 313; *Fish v. Southern Pacific Co.*, 173 Or. 294, 143 P. (2d) 917, 145 P. (2d) 991; *Irwin v. Southern Pacific Co.*, 163 Or. 72, 95 P. (2d) 62.

■ A different rule would obtain, however, if the crossing under the existing conditions was unusually hazardous or dangerous. It would then be the duty of the railroad to use reasonable precaution to warn a motorist that a train blocked the highway. Whether reasonable care under such circumstances required the use of flagmen, flares or other signals would be a question of fact for the jury to determine. *Doty v. Southern Pacific Co.*, supra; *Case v. Northern Pacific Terminal Co.*, supra; *Fish v. Southern Pacific Co.*, supra. As stated in 44 Am. Jur., Railroads, 747, § 506:

"Whether or not a given crossing is unusually dangerous is a question for a jury, unless only one conclusion could be drawn by all reasonable men from the evidence relative thereto."

The degree of care would be commensurate with the danger involved—such rule being applicable alike to the railroad company and to the motorist.

As to what constitutes an extrahazardous or dangerous railroad crossing is a question on which there is great conflict of authority. See cases in notes: 71 A. L. R. 1166; 16 A. L. R. 1277. Obviously, each case depends upon its own factual situation. Courts differ in their conclusions even though there is no material difference in the facts. Some courts apply "horse and buggy" rules to a motor age and seem to imply that there could be no liability under any factual situation. In other cases the railroads have practically been made insurers against injury. We do not adopt either of these extreme views.

■ How may it be determined whether a railroad crossing is hazardous or extrahazardous? In our opinion, if the railroad company through its operative employees could, under the existing conditions, reasonably anticipate that a motorist exercising due care in driving his automobile and having standard lights would nevertheless be likely to be injured by reason of the train blocking the highway, it can then be said that the crossing is extrahazardous or dangerous. As said in *Plante v. Canadian Nat. Rys.*, 138 Me. 215, 222, 23 A. (2d) 814, 817:

> "The proper test as to the necessity for warning, when a highway crossing is obstructed by an unlighted train at night, is whether the railway employees, in the exercise of proper care, should recognize danger of collision with a highway vehicle operated by a man of ordinary prudence." Citing in support thereof: *Gilman v. Central Vermont Ry. Co.*, 93 Vt. 340, 107 A. 122, 16 A. L. R. 1102; *Philadelphia & Reading Ry. Co. v. Dillon*, 31 Del. 247,

114 A. 62, 15 A. L. R. 894; *St. Louis-San Francisco Ry. Co. v. Guthrie,* 216 Ala. 613, 114 So. 215, 56 A. L. R. 1110; *Trask v. Boston & Maine Railroad,* 219 Mass. 410, 106 N. E. 1022.

The cases cited in *Plante v. Canadian Nat. Rys.,* supra, support the rule as above stated, but in each of them the court held as a matter of law that the facts did not show that the railroad crossing in question was extrahazardous or dangerous. In *Gilman v. Central Vermont Ry. Co.,* supra, the driver of the automobile struck the train at a crossing because he was unable to stop on account of the "greasy condition of the road." The court well said that the defendant railroad company was not responsible for this condition and that there was no evidence that the trainmen knew or ought to have known of its existence. In *Philadelphia & Reading Ry. Co. v. Dillon,* supra, the plaintiff at the time of the collision was driving in a car at night time without lights which, as the court said, "would indicate a well-defined intent on the part of the driver to commit suicide, rather than the exercise of ordinary care." In that case the evidence was conflicting about the darkness of the night, but, as the court said, "it was not shown to be foggy, misty, or rainy." In *St Louis-San Francisco Ry. Co. v. Guthrie,* supra, the court held that the evidence left to mere conjecture whether the trainmen in the exercise of due care ought to have anticipated that a reasonably careful driver on the highway would not likely see the train. In *Trask v. Boston & Maine Railroad,* supra, the accident occurred at a crossing upon a highway in the country and not in a populous city on an arterial highway. It occurred at one o'clock in the morning at a time and place where, as the court said, "it could

not reasonably have been anticipated that there would have been a great amount of travel, if any, upon the highway.'' The court, however, did remark that the spur track was infrequently used. There are many factors involved in the instant case relative to the question as to whether or not the railroad crossing was extrahazardous which do not appear in any of the last four cases cited.

■ Whether the crossing in question was extra-hazardous or dangerous must be determined after a consideration of all the facts and circumstances. Here the plaintiff driver was operating his automobile at a reasonable rate of speed on a dark and foggy morning when he collided with a black-colored gondola car blocking an arterial highway in a populous city. His range of vision was only thirty to forty feet. About one second elapsed between the time that he first saw the gondola car fifteen feet distant and when he struck it, if he was traveling fifteen miles per hour. The caution light which he, no doubt, was accustomed to seeing was completely obstructed by the gondola car. The black-top pavement, accentuated by the fog and the dark background, undoubtedly did much to absorb the lights of the automobile and made it extremely difficult to see the obstruction in the highway. *Poehler v. Lonsdale,* 235 Mo. App. 202, 129 S. W. (2d) 59. Furthermore, it should be borne in mind that this gondola car was not moving. It is a well known fact that it is more difficult to see such an object standing on a crossing in dense fog than it would be if the train were moving. The noise of a moving train, which lessens the hazard, is also a factor to be taken into consideration. *Bingham v. Powell,* 195 S. C. 238, 11 S. E. (2d) 275; notes in 71 A. L. R. 1175 and 16 A. L. R.

1284. Plaintiff driver had never seen a train on this spur track until this dark and foggy morning when it suddenly and unexpectedly loomed into sight. There is no direct evidence as to the amount of traffic at the time of the collision, but we think a reasonable inference can be drawn from the facts proven that the traffic was heavy and that many other persons, no doubt, were en route to their work at this particular time of the morning. Viewing this evidence in the light most favorable to the plaintiffs, can we say as a matter of law that this railroad crossing was not extrahazardous or dangerous? In our opinion, the evidence is sufficient to constitute a prima facie case of negligence on the part of the defendant railroad company.

We are not unmindful that the numerical weight of authority is contrary to our conclusion that there is some substantial evidence tending to show negligence. However, it is believed that the modern trend of authority is in keeping therewith. In many jurisdictions, the courts refuse to hold a railroad company negligent at such crossing accidents for the reason that trainmen have the right to assume that an ordinarily prudent person would drive his car at such speed as to enable him to stop within the range of his vision, following the much cited case of *Lauson v. Fond Du Lac*, 141 Wis. 57, 123 N. W. 629, 135 Am. St. Rep. 30, 25 L. R. A. (n.s.) 40. This court, however, has not adopted this hard and fixed rule that a driver of an automobile must under all circumstances be able to stop within the range of his vision. *Alt v. Krebs*, 161 Or. 256, 88 P. (2d) 804; *Murphy v. Hawthorne*, 117 Or. 319, 244 P. 79, 44 A. L. R. 1397. In discussing such question, this court in the Murphy case—involv-

ing a collision of an automobile with a truck parked on the highway at night without lights—said:

> "Plaintiff had a right to assume, in the absence of notice to the contrary, that defendant would not put this dusty, gray-colored truck on the highway after dark without displaying a red light on the rear thereof. If the truck had been lighted, the jury might well have drawn the reasonable inference that plaintiff would have been able to avoid striking it."

See editor's comment on such rule in 44 A. L. R. 1403. Applying the same reasoning to the case at bar, it would seem that if this was an extrahazardous crossing and the railroad company had given some reasonable notice or warning of the presence of the train, the motorist might have been able to avoid striking it.

The following cases fairly support the view that it was error to withdraw the issue of negligence from the jury: *Doty v. Southern Pacific Co.*, supra; *Fish v. Southern Pacific Co.*, supra; *Russell v. Oregon R. & N. Co.*, 54 Or. 128, 102 P. 619; *Peri v. Los Angeles Junction Ry.*, 22 Cal. (2d) 111, 137 P. (2d) 441; *Richard v. Maine Cent. R. Co., and Sylvester v. Same*, 132 Me. 197, 168 A. 811; *Poehler v. Lonsdale*, supra; *Broberg v. Northern Pacific Ry.*, (Mont.), 182 P. (2d) 851; *Jarvella v. Northern Pacific Ry. Co.*, 101 Mont. 102, 53 P. (2d) 446; *Los Angeles & Salt Lake R. Co. v. Lytle*, 56 Nev. 192, 47 P. (2d) 934, 52 P. (2d) 464; *Miller v. Atlantic Coast Line R. Co.*, 140 S. C. 123, 138 S. E. 675, 275 U. S. 556, 72 L. Ed. 424, 48 S. Ct. 117; *Prescott v. Hines*, 114 S. C. 262, 103 S. E. 543; *Godwin v. Camp Mfg. Co.*, 183 Va. 528, 32 S. E. (2d) 674; *Hendrickson v. Union Pacific R. Co.*, 17 Wash. (2d) 548, 136 P. (2d) 438; *Arnold v. Illinois Cent. R. Co.*, (La.), 32 So. (2d) 76, 33 So. (2d) 98.

In the Arnold case last above cited, there was a collision on an early foggy morning between an automobile and a tank car stopped on the track of the railroad which crossed a main highway at right angles just beyond the corporate limits of the city of Hammond. The court said the weather was so foggy that the plaintiff Arnold "could not see the tank car across the highway on account of its color, the condition of the road, and the poor visibility because of the darkness and fog." The railroad company was charged with negligence, among other things, in failing to have adequate warning signals and other devices to notify motorists of the crossing. The court sustained a judgment for the plaintiff and held, in keeping with the reasoning in *Squyres v. Baldwin,* 191 La. 249, 185 So. 14, that it was the duty of the railroad to take extra precautions to protect traffic when blocking this highway. The court said:

> "The railroad employees knew this crossing to be used frequently as it is on one of the main thoroughfares of the State. They also knew that the fog was heavy and visibility poor, but seem to have remained content to stay in their respective places in the engine and caboose while their train was blocking the highway a quarter of a mile away for at least a few minutes—probably two or three minutes—during which time they should have reasonably expected several automobiles and trucks to approach the crossing."

In *Doty v. Southern Pacific Co.,* supra, and *Fish v. Southern Pacific Co.,* supra, each involving a collision between an automobile and a moving train at a grade crossing within the corporate limits of a city, the court sustained a judgment for the plaintiff. *Both of these accidents occurred in daylight.* In the Fish case

there was evidence that plaintiff's vision of the main line track was obstructed by box cars on the switch track parallel thereto. In the Doty case the plaintiff's vision was likewise obstructed by box cars. There was other evidence considered in both cases relevant to the danger of the railroad crossing, but the obstruction of vision by the box cars was undoubtedly the principal factor. The court held in both cases that there was substantial evidence tending to show that the railroad crossing was extrahazardous or dangerous, and that it was a question of fact for the jury as to whether the railroad company was negligent in failing to maintain flagmen or some warning signal at the crossings. If the existing conditions in the Doty and Fish cases were substantial evidence of an unusual hazard, it would seem clear that the combined circumstances in the instant case would be sufficient to raise a question of fact as to whether the crossing was extrahazardous. What difference does it make—so far as danger is concerned—whether your vision is obstructed by box cars or by dense fog?

*Meaney v. Portland Electric Power Co.,* 131 Or. 140, 282 P. 113—decided in 1929—was an action to recover damages arising out of a collision in the night between an automobile and an empty logging train standing on a crossing in a rural community in Clackamas county. *It was an emergency stop.* Plaintiff had judgment. The trial court granted a new trial, and this order was affirmed on appeal. This court said that the crossing was not extrahazardous and that error was committed in instructing the jury as to the duty of the defendant to have a flagman or warning signals. It was held, however, that it was proper to submit to the jury the question of failure to blow the whistle.

If an emergency in fact existed, the trainmen were entitled to a reasonable time in which to warn the motorist of the danger, assuming the crossing to be extrahazardous. If the crossing was not extrahazardous, the train itself was adequate notice of its presence.

In *Irwin v. Southern Pacific Co.*, supra, there was also a collision between a truck and an empty logging train stopped at a crossing of the North Santiam arterial highway in the town of Aumsville. The train, which was headed in a southerly direction, had stopped for the purpose of taking water at a tank on the south side of the highway. The decedent was driving his truck in a westerly direction, with lights burning, at a speed of approximately 35 miles per hour. The track crossed the highway at right angles and was about two to four feet above the common level of the highway. The accident occurred about 8:30 o'clock on the evening of June 17, 1939. The weather was cloudy and the black-top pavement was wet. In this twilight hour, the visibility was poor. The train had been left standing on the crossing from five to fifteen minutes prior to the time of the collision and was in violation of the company rules in reference to the obstruction of a public crossing. There was no flagman, light or signal to warn a motorist that the highway was blocked by these empty "logging flats." There was testimony that it was extremely difficult for a driver of an automobile approaching the track to see a narrow steel beam of a "logging flat." On appeal the judgment of involuntary nonsuit was affirmed on the grounds: (1) there was no evidence tending to show negligence on the part of the railroad company; and (2) decedent was guilty to contributory negligence as a matter of law.

It is difficult to reconcile the decision in *Irwin v. Southern Pacific Co.*, supra, with our conclusion in the case at bar, although the facts in the two cases are in some respects materially different. In the light of the more recent decisions of this court and those from other jurisdictions above cited, we think *Irwin v. Southern Pacific Co.*, supra, is not controlling. The evidence in that case on both issues was, in our opinion, sufficient to present a question of fact for the jury to decide. There should be some certainty in the law and to that end *Irwin v. Southern Pacific Co.*, supra, is overruled.

■ In the case at bar it cannot be said as a matter of law that the plaintiff driver was guilty of contributory negligence. The law applicable to the issue of contributory negligence was thoroughly reviewed in the Doty and Fish cases, and we see no need to lengthen this opinion by repetition. In those cases it was held that whether the plaintiff therein was guilty of contributory negligence was a question of fact. There is equally good reason to so hold here. As said in *French v. Christner*, 173 Or. 158, 170, 135 P. (2d) 464, 143 P. (2d) 674, 676:

> "In determining the question of contributory negligence we must measure the conduct of the plaintiff, not in the light of subsequent events, but by the standard of care which would have been exercised by an ordinarily prudent and careful person under the conditions then appearing to exist."

Since the cause must be remanded for a new trial, we deem it advisable for the guidance of the trial judge to say that the following specification of negligence alleged in the complaint should be eliminated from consideration by the jury:

"(a) In operating his train on the said track without previous notice to the public, in view of the fact that the said track had not been used except in rare instances for many years."

The judgment of involuntary nonsuit is reversed and the cause remanded for a new trial.

PAGE, J., did not participate in this decision.

LUSK, C. J., and BRAND, J., dissent.

ON PETITION FOR REHEARING.

*Alton John Bassett*, of Portland, argued the cause for appellants. With him on the briefs was William J. Crawford, of Portland.

*Manley B. Strayer*, of Portland, argued the cause for respondent. With him on the brief were Hart, Spencer, McCulloch & Rockwood, and John C. Beatty, Jr., all of Portland.

Briefs of amici curiae supporting respondent's petition for rehearing filed by Clarence J. Young and John Gordon Gearin; and Roy F. Shields and Randall B. Kester, all of Portland.

Brief of amici curiae, contra, filed by Green, Landye & Richardson and Burl L. Green, Hicks, Davis & Tongue and William M. Dale, Jr., Anderson & Franklin, Emerson U. Sims, Paul R. Harris, Leo Hanley and Honry A. Carey, Jr., J. Robert Patterson, Krause, Evans & Korn, and Yunker & Jordan, all of Portland; George H. Brewster, of Redmond; W. C. Winslow, Brazier C. Small, and Bruce Spaulding, all of Salem; Neff & Frohnmayer, of Medford; and David B. Evans, of Eugene.

FORMER OPINION SUSTAINED.

BELT, J.

We have again carefully considered this case and have concluded to adhere to the opinion on original hearing.

ROSSMAN, BAILEY, HAY and LATOURETTE, JJ., concur.

LUSK, C. J., and BRAND, J., dissent.