Argued October 7, reversed November 18, 1959

# CARLSON *v.* SOUTHERN PACIFIC COMPANY

346 P. 2d 381

*John Gordon Gearin,* Portland, argued the cause for appellant. With him on the briefs were Koerner, Young, McColloch & Dezendorf, and Joseph Larkin, Portland.

*Orval Thompson,* Albany, argued the cause for respondent. On the brief were Weatherford & Thompson, Albany, and Frank D. Mayer, Lebanon.

Before McALLISTER, Chief Justice, and PERRY, O'CONNELL, and REDDING, Justices.

PERRY, J.

This is an action for the recovery of damages for personal injuries suffered by the plaintiff while riding in an automobile driven by her husband. The plaintiff recovered in the trial court and the defendant Southern Pacific Company appeals.

For convenience, in this opinion we will refer to the Southern Pacific Company as the defendant.

The facts disclose that the automobile in which plaintiff was riding, traveling north on the Scio-Lebanon County Road, was driven into the nineteenth car of defendant's train as it was proceeding slowly in an easterly direction over a grade crossing which intersected the highway.

There were approximately 38 cars in the train, all empty flat cars used for the purpose of hauling logs. These flat cars, sometimes called "logging flats," are either 42 or 67 feet long, and consist mostly of the wheel trucks, central channel, and bolsters for holding the logs, there being no superstructure rising above the bed of the cars.

The grade crossing where this accident occurred is in a rural area near Griggs Station, and the Scio-Lebanon county road at this point is intersected by a main line and switch track. A plywood mill and log pond are located in this area. There is practically no rise in the grade of the highway for a distance of 800 feet to the railroad crossing in the direction from which the automobile was approaching, the road being described by all witnesses as level.

The accident occurred at approximately 7:45 p.m. on October 19, 1953. It was dark at the time of the collision, but the weather was clear, the road dry, and the moon had been shining intermittently. There are no obstructions to a clear view of this crossing for at least 800 feet.

The defendant sets forth eleven assignments of error. The first is based upon the refusal of the trial court to grant its motion for a directed verdict. This assignment deals with the question of whether the railroad crossing where the accident occurred is or is not an extra-hazardous crossing within the meaning of the law.

If this crossing is not extra-hazardous, the plaintiff is not entitled to recover, for all of her allegations of negligence are based upon the premise that this is an extra-hazardous crossing, and that defendant failed in its duty, such as posting flagmen, having a lighted signal or ringing bell at this place, thus taking precautions it owed to highway travelers passing over this particular crossing.

▪■ Whether or not a railroad crossing is extra-hazardous may be a question of law or fact. It becomes a question of fact when there existed at the time of the occurrence unusual conditions, "* * * such as impaired visibility because of fog, combined with other facts; peculiar traffic hazards on a heavily traveled street in a city; obstructions to view or other very uncommon circumstances." *Schukart v. Gerousbeck,* 194 Or 320, 331, 241 P2d 882.

While the plaintiff contends in her brief that this highway is in an industrial area and heavily traveled, an examination of the record makes it quite clear that the presence of the plywood mill and log pond does not create any hazard in this area. Nor is there any evidence that the travel upon the highway is so heavy that it creates any peculiar hazards.

The real question presented by this appeal is stated in plaintiff's statement of facts: "That the cars because of this construction could not be seen at night, and that made it impossible for one driving an

automobile to see the cars in time to stop and avoid a collision."

Stated otherwise, plaintiff's contention is that it was unreasonable to expect a reasonably prudent automobile driver exercising due care, and with his automobile properly equipped with lights, to observe the railroad cars at night as they passed over the grade crossing, and, therefore, the crossing is extra-hazardous because "* * * the railroad company through its operative employees could, under the existing conditions, reasonably anticipate that a motorist exercising due care in driving his automobile and having standard lights would nevertheless be likely to be injured by reason of the train blocking the highway, * * *." *Finn et al. v. Spokane, P. & S. Ry. Co.,* 189 Or 126, 134, 214 P2d 354, 218 P2d 720.

The difficulty with plaintiff's contention is that the "existing conditions" referred to in the cases as creating an extra-hazardous situation all refer to conditions apart from the operating equipment of the train itself. *Spencer v. Southern Pacific Co.,* 199 Or 246, 260 P2d 956; *Schukart v. Gerousbeck,* 194 Or 320, 241 P2d 882, supra; *Rogers Adm'r v. So. Pac. Co. et al.,* 190 Or 643, 227 P2d 979; *Finn et al. v. Spokane, P. & S. Ry. Co.,* 189 Or 126, 214 P2d 354, 218 P2d 720, 194 Or 288, 241 P2d 876, supra; *Doty v. Southern Pacific Co.,* 186 Or 308, 207 P2d 131; *Case v. N. Pacific Terminal Co.,* 176 Or 643, 160 P2d 313; *Fish v. Southern Pacific Co.,* 173 Or 294, 143 P2d 917, 145 P2d 991; *Andersen v. Southern Pacific Co.,* 165 Or 368, 106 P2d 1048; *Meaney v. P.E.P. Co.,* 131 Or 140, 282 P 113; *Russell v. Oregon R. & N. Co.,* 54 Or 128, 102 P 619.

There can be no question but that this is the intent of the law, because "Under ordinary conditions a train on a railroad crossing is adequate notice of

its presence, and there is no duty to use flagmen, flares or other signals to warn a motorist of any danger, as it may be assumed that he will exercise due care to avoid injury." *Finn et al. v. Spokane, P. & S. Ry. Co.,* supra, 189 Or 126, 133.

■ Our examination of many cases leads us to the conclusion that, except where there is extra heavy highway travel, as in a city, it is only when there are conditions existing which prevent the traveler from having an adequate view of the crossing itself, or the immediate approach of a train to the crossing, that the presence of the train itself is not adequate notice and other precautions must be taken by a railroad to comply with its duties to the highway traveling public.

■ To extend this rule to the effect that the railroads shall use only equipment that is plainly visible to the traveling public when darkness falls, or give some other warning of the presence of a train when certain types of equipment are used, may be desirable from the standpoint of the safety of the motoring public, but this must be balanced with the public interest that requires adequate public service from the operation of the railroads, and, therefore, is a matter that should be addressed to the legislature.

■ As stated by the late Mr. Justice Tooze in *Schukart v. Gerousbeck,* 194 Or 320, 333, 241 P2d 882:

"The interest of the public in the continuous, uninterrupted, and unobstructed operation of a railroad is at least equal, if not paramount, to its interest in highway use. Public policy has always demanded, and now does demand, that a railroad company be permitted to carry on its functions as a common carrier without unreasonable and unnecessary interference which will slow up, interrupt, or obstruct traffic."

■ As a matter of law, the railroad crossing involved in this case was not at the time of the occurrence extra-hazardous, and the defendant's motion for a directed verdict should have been granted.

This disposes of the principal assignment of error of the defendant and it becomes unnecessary for us to consider its other assignments.

The cause is reversed with instructions to enter judgment for the defendant.