Ted HUNT and Leona Hunt, husband and wife, Plaintiffs and Appellees,

v.

UNITED STATES of America, Appellant.

Gordon W. McCRARY, Jr., and Phyllis A. McCrary, as Co-Administrator/Administratrix and personal representatives of Cindy Marie McCrary, deceased, as Father and Mother and Next Friends of Teresa Irene McCrary, a minor child, and also individually, Plaintiffs and Appellees,

v.

UNITED STATES of America, Appellant.

UNITED STATES of America, Appellant,

v.

STATE OF ALASKA, Appellee.

Nos. 24357, 24382.

United States Court of Appeals, Ninth Circuit.

Sept. 18, 1970.

Rehearing Denied Jan. 4, 1971.

Reed Johnston (argued), Robert V. Zener, Attys., William D. Ruckelshaus, Ass't. Atty. Gen., Dept. of Justice, Washington, D. C., Douglas B. Baily, U. S. Atty., Anchorage, Alaska, for appellant.

George N. Hayes (argued), Delaney, Wiles, Moore, Hayes & Reitman, Joseph L. Young (argued), of Atkinson, Wade, Conway & Young, Anchorage, Alaska for appellees.

Before CHAMBERS, HAMLEY and KILKENNY, Circuit Judges.

CHAMBERS, Circuit Judge:

The Alaska Railroad is a small part of the United States Government.

On the morning of January 1, 1966, Leona Hunt drove the Hunt family car along a well-traveled state highway into the second engine unit of an Alaska Railroad train at a crossing between Palmer and Anchorage, Alaska. Mrs. Phyllis McCrary and two McCrary children were guest passengers in the Hunt car. All were injured and Cindy Marie McCrary, a daughter, died as a consequence of the injuries.

Recoveries have been had against the government under the Federal Tort Claims Act for the three survivors and for the estate of the deceased child. An effort by the United States to recover over against the state of Alaska was rejected by the district court.

We affirm the trial court judgment, except we reverse as to Mrs. Hunt and her husband, who joined as plaintiff, holding that as a matter of law she was guilty of contributory negligence. In this day when generally most negligence questions are ones of fact to be settled by the trier of fact, one must be extremely cautious about disturbing a finding of negligence or non-negligence. Essentially it is our conclusion that the Hunt car just hit the train too far from the front end of the train (160 feet) for the driver's recovery to stand.

It seems clear, according to the tachometer of the engines, that just before the train applied its brakes it was

moving at 20 miles per hour. The Hunt car approached the crossing on an open but uncompleted new state highway. If the car driver had been alert the car speed (35 to 40 miles per hour) might not have been excessive. Driving conditions were severe. Although the sun was shining, the wind was strong. There was swirling snow. And there was ice on the road. At some time (not necessarily the same time), the engineer and the car driver saw each other. Each applied locked brakes. The train engines slid approximately 450 feet and the car approximately 153 feet. (Much of the slide of the train was after the impact.) The driver had been over the same road the day before. The train engine must have been clearly visible for at least 100 feet before it entered the crossing. On an icy road the car was just not being operated with due care as it approached the crossing. The driver was either going too fast or not paying attention to her driving as she approached the crossing. Maybe it was both.

The state of Alaska needed and obtained an easement to take the new road across the railroad track. There were two agreements between the state and the railroad. When the highway should be completed there was to be a flashing signal and a gong or bell at the crossing, to be installed partially by the state and partially by the railroad. The first stages, to be done by the state (or its highway contractor), had not been completed.

As we see it, the railroad, which granted the highway easement, might well have insisted that the highway not be opened until the new safety devices were installed.

The railroad makes a very strong case that the state of Alaska was negligent in not having the crossing signals installed before opening the highway and says the highway was prematurely opened for political purposes. The trouble with this idea is that the railroad had to know that the state of Alaska had set up a very dangerous crossing. The railroad knowing this, a trier of fact could well conclude that while a properly protected crossing may justify a railroad in maintaining a certain speed, there arose a duty to slow up even more than it did in approaching the crossing not properly protected. In its attempt to shift the liability to the state of Alaska, the government proves too much. It is likely that the state is a joint tort feasor, if the railroad is. But that is of no avail. The state of Alaska and the United States as joint tort feasors, if such they be, cannot apportion the negligence. The negligence of the railroad was active in not going slower under the circumstances. We fully realize that trains must go through, but we do not expect to again soon get a case where the state and the railroad had agreed on the advisability of certain safety devices and then desultorily go about installing them.

In the contract documents there is a possibility of contractual indemnity, but that is not within the pleadings, the pre-trial order or the theory of the trial. And we would doubt that the agreements required the state of Alaska to indemnify the railroad against the latter's negligence.

Obviously, we have not dealt hereinabove with remote, infrequently used crossings.

The case is remanded for proceedings consistent herewith.

KILKENNY, Circuit Judge (concurring and dissenting):

I concur in the majority opinion with the exception of the reversal as to the plaintiffs Hunt. The crossing was extrahazardous. Much in point is Finn et al. v. Spokane, Portland & Seattle Ry. Co., 189 Or. 126, 214 P.2d 254, 218 P.2d 720 (1950), which thoroughly analyzes the legal principles involved and, in my opinion, requires us to affirm the Hunt

judgment. The Alaska Supreme Court if faced with the precise problem, in my opinion, would follow the logic of the Oregon Supreme Court in *Finn* and would leave to the trier of the facts the issue of Mrs. Hunt's contributory negligence.

I would affirm the judgments.