DOMINGO FIGUEROA ORTIZ ET AL., Plaintiffs and Appellees, *v.* CENTRAL MERCEDITA, INC., and U. S. FIDELITY & GUARANTY COMPANY, Defendants and Appellants.

No. 11171. Argued June 1, 1954.—Decided July 7, 1954.

824

*Enrique Báez García* for appellants. *Rafael Atiles Moreu* for appellees.

MR. JUSTICE ORTIZ delivered the opinion of the Court.

This is an action involving a claim for damages by reason of a collision between some cars pushed by a railway engine owned by codefendant Central Mercedita, Inc., and a motor vehicle owned by plaintiff Domingo Figueroa Ortiz when the latter crossed a railway crossing utilized by Central Mercedita Inc., on a municipal road leading from a public

highway to Barrio Capitanejo, at a point between Ponce and Santa Isabel. The Ponce Part of the Superior Court sustained the complaint after making several findings of fact. It held that the sole cause of the accident was the negligence of codefendant Central Mercedita, Inc., and that plaintiffs were not negligent at all. The findings of fact are in part as follows:

"2. On February 14, 1951, about 6:00 or 6:30 p.m., plaintiff Domingo Figueroa, a licensed driver and owner of a 1940 Oldsmobile passenger car, of the station wagon type, public-license plate PA–53–650, was driving along a municipal road leading from insular highway No. 3 to Barrio Capitanejo, at a point between Ponce and Santa Isabel, carrying co-plaintiff Mercedes Santiago Dávila and another passenger. He was returning from Tiburones and, approaching a railway crossing utilized by defendant Central Mercedita, Inc., his car was struck by 40 empty sugar-cane cars which were being pushed in the direction of Bocachica by Caterpillar engine No. 26, owned by Central Mercedita, Inc., which was on that date and hour in the service of the defendant, and was then and there operated by its dependents or employees, José María Rivera and Miguel Vázquez.

"3. The vehicle or station wagon in question was well over ten years old, and had been purchased by plaintiff under a conditional sales contract for $650 six months before the collision. When the accident occurred, Figueroa was driving at a moderate speed and it was struck on the left rear and so badly damaged that it was rendered useless as a passenger car, and he sold it for $75, to be used as repair parts.

"4. As he came to the grade crossing, which is slightly inclined, plaintiff saw no lights, chains, gates, signals, or devices to warn passers-by.

"Plaintiff heard no bell, gong, or whistle warning against the approaching train. He was familiar with the crossing and that it was customary for the defendant to maintain a flagman at the place to signal the approach of the sugar-cane train and cars. He had seen him before on many occasions and, not seeing anyone and in the belief that no train was in sight, he proceeded slowly; and when more than one-half length of his vehicle had crossed the track, it was struck, as already

stated, by the train and hurled into the cane field together with ten cars which were derailed and piled up next to the vehicle.

"Defendant's employee, José María Rivera, testified that he alighted from the first car and walked ahead of the train toward the crossing to signal with a flag which he carried for that purpose. He stated that he knew plaintiff by sight and saw him driving his station-wagon 'as it came up,' and ordered him to halt, that is, to stop, but that plaintiff paid no attention and increased his speed, that is, he accelerated and 'was struck' by a car.

"5. We disbelieved José María Rivera's testimony which seemed incredible, for if plaintiff was familiar with the crossing, having passed it many times theretofore, and knew from experience that an employee always signalled the approach of a train with a flag, he would not have crossed the track had the witness been signalling at the crossing, and much less if he had ordered him to stop, as the witness said he did.

"We do, however, believe the testimony of witness Rivera in so far as it corroborates plaintiff's statement that on many occasions he had seen a flagman posted at that place whenever a train was approaching. In other words, it was customary for defendant Central Mercedita, Inc., to signal through its employees for the safety of passers-by whenever a sugar-cane train was being operated in that place.

"Neither was plaintiff warned of the impending danger by a gong or whistle. Witness Luis Díaz Núñez testified that he heard no whistle; likewise, neither did José María Rivera nor Manuel Pizarro, eyewitness for the defense, testify that a whistle or gong was sounded.

"Viewing in the light most favorable to plaintiff, the testimony of the latter witness, Manuel Pizarro, who stated that 'I heard the crash' as the engineer alighted from the train with a signal flag, that the cars piled up, and that the station wagon landed in the cane field to the right of the lane, we could conclude that defendant tried to fulfill its duty of giving warning, but that it was late and useless and, as a question of fact, that defendant's employees were negligent in awaiting the train's arrival to give the signal.

"We conclude that the defendant on this occasion was, as a question of fact, negligent in failing to signal the approach of the cars and engine which collided with plaintiff's vehicle.

"7. Since he saw no signs, signals, or heard no alarm as he came to the crossing, we believe that plaintiff did not, as a question of fact, act recklessly in attempting to cross the track.

"8. As a result of the crash, plaintiff Domingo Figueroa Ortiz received a wound on the left arm produced by glass broken from the impact of the train, and erosions on the right forearm and elbow. He was treated for some two weeks by Dr. Godreau, to whom he paid fees in the sum of $30 and still owes him $15. He spent $25 in medicines.

"In view of the nature of the injuries and the fact that he was not hospitalized, we conclude that the injuries were minor; we do not believe the pains were acute, nor that the physical injuries were reasonably worth more than $300.

"9. Codefendant Mercedes Santiago Dávila was riding in the front seat to the right of Domingo Rivera Ortiz. He testified that he received a blow in the brain (pointing to the back of his neck) and contusions on the right leg. He received first aid in the Tricoche Hospital and was given liniment to apply to the bruises. He further testified that a few days later he paid a visit to Dr. Godreau, the physician who had treated plaintiff Figueroa. He treated him three times and charged him $20.

"In view of the nature of his injuries, the prescription given him at the first treatment, the three visits made to Dr. Godreau for treatment, who did not even apply a bandage to the injuries, and the low fees charged ($20), we believe that his injuries were unimportant, and that the two months which he stayed away from work was not due to or the result of such injuries, nor that the alleged physical pains are reasonably worth the sum of $600 claimed."

Defendants appealed to this Court assigning the following error:

"The lower court erred in sustaining the complaint and in not considering the defense raised by defendant in its answer, to the effect that coplaintiff Domingo Figueroa Ortiz was guilty of contributory negligence, and that the accident would not have occurred had coplaintiff not contributed with his own negligence."

 Although appellants do not specifically point out as erroneous the action of the Ponce Court holding that Central Mercedita, Inc., was guilty of negligence and establishing its liability, they argue in their brief that that entity was not negligent. They allege that they were under no duty to maintain at the crossing in question any gatekeeper, chains, or other adequate safety devices, since under § 3 of Act No. 70 of 1917 (Sess. Laws, Vol. II, p. 448) such duty arises only at "all grade crossings of insular public roads and at all such other public crossings as the Commission (Public Service) may designate." Cf. *Castellano* v. *P. R. Beverages*, 74 P.R.R. 830, 835, and cases therein cited, to the effect that the failure to keep such safety devices at grade crossings other than crossings and grade crossings of insular public highways or public crossings designated by the Public Service Commission, does not constitute negligence *per se*. The grade crossing or intersection herein involved is neither a crossing of an insular public highway nor a public crossing designated by the Public Service Commission. This notwithstanding, a railway or railroad company may be negligent in not maintaining safety devices or warning signals at a crossing other than those enumerated in Act No. 70, *supra*, if, as a matter of fact, the customary use of the place in question as a public crossing by the public, pedestrians, motor vehicles, and even the railroad company, is generally and publicly established. As stated in *Jones* v. *Atlanta-Charlotte Air Line Ry. Co.*, 63 S. E. 2d 476, 479, decided in 1951, a majority of the courts of other jurisdictions has adopted the view that a railroad does or may owe a duty to anticipate the presence of persons [or vehicles] along or crossing its tracks at a well-defined pathway at a place in which it has acquiesced in a somewhat general use thereof (not amounting to a legally established public use), or where the circumstances have been such that the presence of persons [or vehicles] on or along the tracks at that particular place may

reasonably be expected. (See, also, 120 A.L.R. 184.) Where a railroad company has established the practice of maintaining safety or signaling devices at a crossing, so that the public has become acquainted with the practice, and reasonably relies on the continuance of such safeguard, the failure to use or place the safety or signaling devices at a particular time is a circumstance to be considered in determining negligence. 44 Am. Jur. 765, § 521; 16 A.L.R. 1285; 71 A.L.R. 1175; *Case* v. *Northern Pac. Terminal Co.*, 160 P. 2d 313. Specifically, if it is customary to maintain a flagman or person to give the necessary warnings or signals, his withdrawal at a given moment may constitute negligence. 44 Am. Jur. 770, § 526; 24 A.L.R. 2d 1166. Where a railroad company has established the practice of giving signals or keeping a flagman at a place frequently used at a crossing, and such practice is notorious, the traveler has the right to expect that the usual warning will be given, and the failure of the company to do so is a proper fact to be considered by the court in determining the question of negligence. *Midland Valley Ry Co.* v. *Shores*, 136 Pac. 157. But the weight of authority is that the duty of a railroad to give crossing signals applies to crossings not technically highway crossings, but used as such. 44 Am. Jur. 612, note 3. Some statutory provisions requiring certain precautions in the operation of trains and cars are generally held to apply not only to crossings of formally established public highways, but also to all crossings which are public in fact, through dedication to public use. 74 C.J.S. 1380; *Gregoriev* v. *Northwestern Pac. Ry Co.* (California), 273 Pac. 84.

In *Garcia* v. *American Railroad Co. of P. R.*, 45 P.R.R. 738, 742, it is stated as follows:

". . . Once the public character of a road is established, the inaction of the commission can not be set up by the railroad company in order to avoid the duties imposed upon it by law and required for the security and protection of the persons traveling upon the road and the crossing. A public road may

be such without any declaration to that effect by the Public Service Commission. . . ."

In *People* v. *Pagán*, 49 P.R.R. 423, it is stated as follows at p. 433:

"We can say that we have examined all the evidence introduced and we are inclined to believe that the jury was correct in weighing the same. The defendant maintains that in accordance with the adjudicated cases, the engineer of a train is not required to blow the whistle in approaching a private crossing. This rule is not absolute. The special circumstances of each case must always be considered. The adjudicated cases themselves recognize some exceptions. The crossing where the accident occurred was often used by the laborers of the 'Río Jueyes' cane plantation (*colonia*) and the public had access to the said crossing. Moreover, in Puerto Rico there is Act No. 70 of 1917 (II), *supra,* Subsection 3 (*q*) of which reads as follows:

" 'If a railroad company, . . . [it shall be the duty] to provide its locomotives with bells and whistles which shall be used upon approaching curves, tunnels, and road or street crossings and whenever necessary as a warning of the approach of such locomotives and trains which shall reduce their speed to a minimum on street crossings, and shall use, after sunset, such lights as may be necessary and the commission may determine.'

"This act, according to the defendant, refers only to public-road or street crossings. Assuming, without admitting, that the act is susceptible of this construction, the attendant circumstances of this case, in accordance with the authorities, support the verdict of the jury. The evidence shows that the company as well as the defendant knew that the place where the accident occurred was frequently used as a trafficway. Under these circumstances, the persons who were accustomed to cross the track had reason to expect a signal from the train, in approaching the crossing. It has been shown that when the accident occurred there were trees and growing cane around the track which considerably obstructed the view. The canes were quite tall and the trees also. There was some conflicting evidence as to the visibility of the train when a person went upon the grade crossing, but the jury weighed the evidence and, in our opinion, it has been established that the view was quite obstructed.

"We have already cited the case of *Ferrer & Son* v. *American R. R. Co., supra,* where, notwithstanding the fact that the crossing involved was not entirely a public one, it was held that it was the duty of the railroad company to give a signal and to use ordinary care."

 The fact that the crossing where the accident occurred has not been formally established as a public crossing, does not in fact exclude the reality, pursuant to the findings of the lower court which were supported by the evidence, that the grade crossing in question was generally used as a public crossing, and that it was the practice of codefendant Central Mercedita, Inc., with which the plaintiffs and the general public were acquainted, to maintain safety devices and warning signals at that crossing when a train was approaching. The failure of codefendant to take such precautions immediately before the occurrence of the accident constituted negligence. The fact that the crossing was not located on a public highway, and that it was not established as a public crossing by the Public Service Commission, does not rule out the possibility that Central Mercedita, Inc., was negligent in failing to maintain the customary gatekeeper or to give proper signals or warnings at the time of the accident. Negligence must not be predicated exclusively on specific statutory provisions, that is to say, negligence is not an exclusive factor of failure to perform statutory duties. Even though there is no violation of a statute or of an administrative provision, the reality of a hazardous situation might arise which brings into existence the duty to act with care, depending on the particular circumstances of each case, and giving rise to negligence for failure to perform a duty created by the demands of such a really dangerous situation, independently of the particular provisions of a statute. The provisions of § 3 of Act No. 70 of 1917, as respects the duty of a railroad at a formally established crossing, must not be so construed as to deprive the courts of their function of determining in individual

cases whether the defendant's conduct measured up to the standard of reasonable care under the circumstances; and that, consequently, the fact that statutory requirements are not fully complied with does not prevent a finding by the jury that the railroad was negligent in not providing additional warning or signals. *Pokora* v. *Wabash Ry. Co.*, 292 U. S. 98; *Grand Trunk Ry. Co.* v. *Ives*, 144 U. S. 408; annotation in 5 A.L.R. 2d 116. The holding in *Castellano* v. *P. R. Beverages, supra*, must be clarified in the sense that, although the failure to maintain such safety devices at a crossing not formally established as public does not automatically constitute negligence *per se*, still, the absence of such legal or formal recognition does not foreclose the possibility of negligence, under the particular circumstances of each case, at a crossing generally used by the public, provided the rules herein outlined are adhered to.

In view of the findings of the Ponce Court transcribed above which are supported by the evidence, the Central Mercedita, Inc., was guilty of negligence. But appellants' main contention is that coplaintiff Domingo Figueroa Ortiz was also negligent in operating his car, in view of his failure to do his duty to "stop, look, and listen" approaching the crossing. However, the rule to "stop, look, and listen" is not an absolute one, that is, the failure to stop, look, and listen is not necessarily negligence, since the question whether or not it is the duty of a traveler to stop, look, and listen before going on a crossing, depends on the surrounding circumstances of each case. 75 C.J.S. 29, 34 *et seq.*, § 774; *Toschi* v. *Christian*, 24 Cal. 2d 354, 149 P. 2d 848, in which it is said that it is not an inflexible rule of the law, and will not be applied where its application would be unreasonable. We ratify what was said in *García* v. *American Railroad Co. of P. R., supra*, in which it is stated as follows at p. 745:

"In our opinion the *Goodman* case should not be interpreted in the sense of imposing on the driver of a motor vehicle the duty to stop always upon reaching a railroad track. It does not seem reasonable to require invariably, in all cases, that the driver should stop completely before going upon the tracks. The general jurisprudence does not sanction such rule. It has been said by a number of courts that a driver of a motor vehicle who intends to cross the tracks of a railroad must stop, look, and listen, at a place from which he can see over the tracks, in order to ascertain whether a train is coming. The prevailing rule, however, is that no such duty is invariably imposed on the traveler as a matter of law. The controverted questions are not always the same, the facts change, and in order to judge the conduct of a driver who has not stopped his vehicle, the circumstances attending his reaching the crossing, his ignorance or knowledge of the situation of the track, and the reliance he may have placed on his opportunity for seeing and hearing, in either direction along the track, must be considered. We have heretofore said that each case has its peculiarities, its characteristic features, its special mark, its own physiognomy, and that it would be no easy task to do justice if in order to determine what facts constitute ordinary care or negligence we had to follow fixed and invariable rules. *Rivera* v. *Central Pasto Viejo, Inc.*, 44 P.R.R. 236, 258. To determine whether or not there was negligence in a particular case we must ask ourselves what a reasonably prudent person would have done in similar circumstances. We must not expect from human nature more than what it can humanly give, and it does not seem reasonable to require precautions which are not adopted in the ordinary course of human conduct, no matter how justified they be when there is a special reason for their necessity, in caring for our own safety and that of others.

"The question to be decided is whether, according to the facts proved, this is a case in which special care should have been exercised by the truck driver, . . ."

See, also, *López* v. *American Railroad Co.*, 50 P.R.R. 1, 25, in which, after citing with approval the portion above transcribed from the *García* case, there is cited the case of *Pokora* v. *Wabash Ry. Co.*, *supra*, decided by the Supreme Court of the United States, as follows:

" 'There is need at this stage to clear the ground of brushwood that may obscure the point at issue. We do not now inquire into the existence of a duty to stop, disconnected from a duty to get out and reconnoitre. The inquiry, if pursued, would lead us into the thickets of conflicting judgments. Some courts apply what is often spoken of as the Pennsylvania rule, and impose an unyielding duty to stop, as well as to look and listen, no matter how clear the crossing of the tracks on either side. (Citations.) Other courts, the majority, adopt the rule that the traveler must look and listen, but that the existence of a duty to stop depends upon the circumstances, and hence generally, even if not invariably, upon the judgment of the jury. (Citations.) The subject has been less considered in this court, but in none of its opinions is there a suggestion that at any and every crossing the duty to stop is absolute, irrespective of the danger. Not even in *B. & O. R. Co.* v. *Goodman, supra,* which goes farther than the earlier cases, is there support for such a rule. To the contrary, the opinion makes it clear that the duty is conditioned upon the presence of impediments whereby sight and hearing become indadequate for the traveler's protection.' *Pokora* v. *Wabash Ry. Co.,* 292 U. S. 98, 102–103."

See, also, *Línea Borinquen, Inc.* v. *F. D. Co.,* 54 P.R.R. 28.

The doctrine that the "stop, look, and listen" rule is not absolute and that its inobservance is not negligence *per se,* is wise and socially convenient. The judicial function of inquiring into the facts and formulating juridical consequences of the true facts, must not be curtailed or tightly closed within the rigid categories of an unbending rule. On the other hand, from the point of view of social interest, railroads and motor vehicles upon a highway are two coordinated transportation factors, socially useful, and no unreasonable burdens should be imposed upon either of the two means of travel. But while rights and obligations of a railroad company and other travelers on the highways are reciprocal, railroads have the right of precedence because of their special character as to the use of tracks which limit their freedom of action. 44 Am. Jur. 734, 735. It would be

unreasonable to charge a railroad with the duty to stop at all crossings. *Texas and Pacific Railway Co.* v. *Cody*, 166 U. S. 606; *Hendrickson* v. *Union P. R. Co.*, 136 P. 2d 438. But it would be equally unreasonable to obligate other vehicles to stop at all crossings, irrespective of the actual needs arising out of each situation. Such an obligation would constitute an excessive burden on public transportation.

Naturally, where conditions increase the danger, the motorist should increase his precautions. 75 C.J.S. 18; *Baltimore Ry. Co.* v. *Felgenhaur*, 168 F. 2d 12; *Dill* v. *Atchinson Topeka Ry.*, 82 P. 2d 158. A person has the duty of looking, in a reasonably effective manner, for approaching trains; and his failure to do so without a reasonable excuse ordinarily constitutes negligence. 75 C.J.S. 25, § 773. A motorist may be misled by appearances, through no fault of his own, to believe that it is unnecessary to stop the vehicle. In other words, where, as in the case at bar, the railroad company has adopted the practice, with which plaintiff is familiar, of maintaining signaling devices at a crossing to give warning of the approach of a train, and fails at a given moment to signal the approach of a train or to operate such safety devices, this failure is tacit indication that no train is then in sight and constitutes an implied invitation to motorists to cross the track without stopping, and such omission may be a reasonable excuse for not performing the duty to "stop, look, and listen." Notwithstanding the failure of the railroad company to follow its practice, the motorist shall always exercise care dependent upon the circumstances of the particular case, but the fact of the implied invitation referred to diminishes the degree or *quantum* of care required of the motorist. *Will* v. *Southern Pacific Co.*, 18 Cal. 2d 468; *Spendlove* v. *Pacific Electric Ry. Co.*, 20 Cal. 2d 632; 184 P. 2d 873. In *Pearson* v. *Baltimore & Ohio Ry. Co.*, 200 F. 2d 569, it is held that under Indiana law, where a railroad has undertaken to

provide safety devices and warning signals, the motorist has the right to presume that if a train were approaching a crossing, the crossing signal would be functioning, and while the fact that the signal was not functioning would not relieve a motorist from a duty of exercising reasonable care for his own safety, such a fact would diminish the amount of care on the part of a motorist necessary to meet the test of reasonableness and would be relevant to the question of whether a motorist was contributorily negligent in not sooner discovering the approach of the locomotive. Especially in that type of situation, where there is no absolute rule, the question whether or not the driver exercised due care or was guilty of negligence, is originally a question for the court of first instance. *Lloyd* v. *Southern Pacific Co.*, (Cal.) 245 P. 2d 583, decided in 1952. In the case at bar the lower court made findings, supported by the evidence, that it was the practice of Central Mercedita, Inc., known to plaintiff who was driving his own car, to signal with flags and sound whistles and gongs whenever a train approached the crossing, that plaintiff Figueroa Ortiz saw no lights, chains, gates, or danger signals at the crossing shortly before the accident, since defendant gave none, nor did he hear any gongs or whistles warning him of the danger, and that he was driving at a reasonable speed. The lower court gave credence to the testimony of plaintiff Figueroa Ortiz. He testified that he was driving at that moment at ten or twelve miles per hour and looked and listened, but heard no sound nor saw the approaching train because of the obstructions of the land. Therefore, the finding made by the lower court that plaintiff Figueroa Ortiz was not, as a question of fact, guilty of negligence, and that the sole cause of the accident was the negligence of codefendant Central Mercedita, Inc., was not clearly erroneous.

The judgment appealed from will be affirmed.

Mr. Justice Sifre did not participate herein.